UNION INSTITUTION FOR SAVINGS *vs.* PHOENIX INSURANCE COMPANY.

Suffolk.    December 13, 1906. — September 4, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Agency. Insurance,* Fire. *Mortgage,* Rights of mortgagee under policy of fire insurance. *Words,* " The insured."

Where a mortgage contains a covenant that the mortgagor shall keep the property insured for the benefit of the mortgagee, and the mortgagor without the knowledge of the mortgagee procures a policy of insurance against fire on the mortgaged property " payable in case of loss to . . ., mortgagee, as interest may appear," if a fire occurs before the mortgagee learns of the existence of the policy, he can sue on the contract made by the mortgagor as his agent, and the fact that at the time of the fire he had not been informed of the action taken by the·mortgagor for his benefit in pursuance of the covenant of the mortgage is immaterial.

Where a policy of fire insurance in the Massachusetts standard form is made payable in case of loss to a mortgagee of the property as his interest may appear, a subsequent conveyance of the equity of redemption by the mortgagor does not affect the right of the mortgagee to recover on the policy.

In an action on a policy of fire insurance by a mortgagee of the insured property to whom the policy is made payable in case of loss " as interest may appear," the proof of an offer by the defendant to pay the plaintiff the amount of the mortgage, made several months after the action was brought and without any offer to pay interest and costs of suit, even if the offer otherwise were equivalent to a tender, is no defence to the pending action because not made within a reasonable time.

The Massachusetts standard form of fire insurance policy contains the following provision : " If this policy shall be made payable to a mortgagee of the insured

real estate, no act or default of any person other than such mortgagee or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate." It also contains a provision that in case of loss " a statement in writing, signed and sworn to by the insured, shall be forthwith rendered to the company, setting forth " the particulars of the loss and other facts and the " manner in which the fire originated so far as known to the insured." It also contains a provision requiring, in case of a failure of the parties to agree as the amount of loss " that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other and the third being selected by the two so chosen," that the award of a majority of the referees shall be final " and such reference unless waived by the parties shall be a condition precedent to any right of action in law or equity to recover for such loss." In different parts of the policy the " mortgagee " is referred to in contradistinction to the " insured." In an action by the mortgagee of the insured property, on such a policy made payable in case of loss to the " mortgagee, as interest may appear," it appeared that the mortgagor procured the policy without informing the mortgagee that he had done so, and soon after receiving it left for parts unknown. It did not appear that he ever had heard of the fire, and he complied with none of the requirements of the policy mentioned above in regard to making a statement in writing of the loss or in regard to arbitration. The plaintiff furnished a statement in writing of the loss about four months after the fire. The amount of the loss was not agreed upon or determined, and the plaintiff did not ask for an arbitration. There was no evidence of a waiver by the defendant. *Held,* that the person referred to as " the insured " in the above requirements of the policy was the mortgagor and not the mortgagee, that on the failure of the mortgagor to make a statement or to ask for arbitration, the mortgagee, without any express provision on the subject, had by necessary implication the right to make a statement of loss and to ask for an arbitration, that this implied contract did not require him to make his statement forthwith after the fire but only to furnish in writing within a reasonable time proper information in regard to the loss as to such matters as a mortgagee reasonably might be expected to know, but that in the absence of an agreement as to the amount of the loss or a waiver of arbitration the appointment of arbitrators to determine the loss was a condition precedent to recovery on the policy, and that the plaintiff's failure to ask for an arbitration was fatal to his claim.

KNOWLTON, C. J.   This is an action upon a policy of fire insurance, which was submitted on a statement of facts to be treated as evidence, it having been agreed that, if in the statement there was evidence for the plaintiff proper to be submitted to a jury, a verdict should be ordered for the plaintiff for a stipulated sum; otherwise, there was to be a verdict for the defendant. A judge of the Superior Court ordered a verdict for the plaintiff in the sum agreed, and reported the case for determination by this court.

The plaintiff was a mortgagee, and the policy contained a statement that it was " Payable in case of loss to the Union

Institution for Savings of Boston, mortgagee, as interest may appear." The mortgage contained a covenant that the mortgagor should keep the property insured for the benefit of the mortgagee. The mortgagor, one Surbridge, procured the policy, but did not inform the plaintiff of it, and the plaintiff had no knowledge of it until after the fire.

The first question is whether the plaintiff can avail itself of the contract thus made for its benefit. We think it plain that this question should be answered in the affirmative. Surbridge acted in part for himself and in part as an agent and representative of the plaintiff in procuring the policy. He must be held to have acted in the same double capacity in receiving and holding it. This policy contained a contract between the defendant and Surbridge, and a somewhat different contract between the defendant and the plaintiff. Both the mortgagor and the mortgagee were protected in their rights under their several contracts contained in a single paper signed by the defendant. *Palmer Savings Bank* v. *Ins. Co. of North America,* 166 Mass. 194. *Hastings* v. *Westchester Ins. Co.* 73 N. Y. 141. *Hartford Ins. Co.* v. *Olcott,* 97 Ill. 439, 456. Surbridge's action in procuring the policy was in pursuance of the covenant in the mortgage, and was founded in part upon the consideration stated in the mortgage. It was immaterial which of the parties protected by the policy retained possession of the paper. It is also immaterial that the plaintiff, at the time of the fire, had not been informed of the action taken by the mortgagor for its benefit, under its authority.

Surbridge, soon after receiving the policy from the defendant, left the State for parts unknown, and, so far as appears, has not returned. It does not appear whether he ever knew of the fire. The policy is in the Massachusetts standard form, which appears in the R. L. c. 118, § 60. It contains this language: "If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate," etc. The case presents questions, as to the rights of the mortgagee under such a policy, which never have been decided in this Commonwealth.

In the first place it is plain that the subsequent conveyance of the equity of redemption, by the mortgagor, does not affect the plaintiff's right to recover under the policy.   *Whiting* v. *Burkhardt*, 178 Mass. 535.   It is equally plain that the defendant's offer, made several months after the action was brought, to pay the plaintiff the amount of the mortgage if the plaintiff would assign it to the defendant, without any offer to pay interest or costs of suit, was not made within a reasonable time and cannot avail the defendant in this action.   *Eliot Five Cents Savings Bank* v. *Commercial Union Assurance Co.* 142 Mass. 142.

The more difficult questions arise under the provision that, in case of a loss, a statement in writing, setting forth the particulars of the loss, shall be forthwith rendered to the company by the insured, and the provision for an arbitration if the parties fail to agree as to the amount of the loss.   It is quite certain that the party referred to as " the insured " in these provisions is the mortgagor.   The contract calls for but one such statement, and if the duty of furnishing it is upon the mortgagee when the loss is payable to him, then there is no such duty upon the mortgagor.   The paper must be " signed and sworn to by the insured " ; it must set forth " the interest of the insured therein," and various other stipulated facts which are peculiarly within the knowledge of the mortgagor, " so far as known to the insured."   The mortgagee is referred to in the policy in contradistinction to the insured, in different parts of the policy.   The mortgagee, to secure his rights in that capacity, must pay on demand " for any increase of risks not paid for by the insured." The company reserves the right to cancel the policy, " after giving written notice to the insured and to any mortgagee," etc. In the clause reciting the consideration, the company " does insure . . ." (the mortgagor).

In *Sanford* v. *Mechanics' Ins. Co.* 12 Cush. 541, a policy was taken out by the lessor of the premises, payable in case of loss to the lessee.   It was held that the lessor was the insured within the meaning of that word in the policy.   In *Turner* v. *Quincy Ins. Co.* 109 Mass. 568, where the policy was payable in case of loss to the mortgagee, the mortgagor was treated as the person insured.   In *Campbell* v. *New England Ins. Co.* 98 Mass. 381, it was said that " the plaintiff did not, by virtue of the clause

declaring the policy to be for her benefit, become the assured." A similar doctrine is stated in *Merrill* v. *Colonial Ins. Co.* 169 Mass. 10, in reference to the assignee of a policy taken as collateral security for a debt. See also *Bowditch Ins. Co.* v. *Winslow*, 3 Gray, 415.

It is not easy to determine, in all particulars, what provisions of the policy are left applicable to the claim of the mortgagee by the stipulation that no act or default of the insured shall affect the mortgagee's right to recover. The stipulation is not limited to acts or defaults occurring before the fire, but it includes all acts or defaults of the mortgagor which otherwise might affect the mortgagee's right to recover.

The policy creates a liability of the insurer which depends in part upon the performance of certain acts by the owner of the property after the fire, in reference to the claim. In making the contract the parties seem to have assumed that a mortgagor who obtains insurance payable to a mortgagee is the party ultimately interested, who will rightly represent the property and act for the mortgagee. It therefore provides that he shall make the statement in writing which the insurer needs as information of the loss. Under the contract the insurer may determine within fifteen days to repair or rebuild the property instead of giving a pecuniary indemnity. The substance of the agreement is to indemnify, to the amount stated, only after receiving a statement in writing in regard to the loss, and after an award by arbitrators fixing the amount, if the amount is not agreed upon. The policy therefore provides that the insured, the mortgagor, shall also act in the appointment of arbitrators. Under the clause already quoted, the mortgagee's right to recover is not affected by the mortgagor's acts or defaults in regard to these matters.

The question arises what are the rights of the other parties if the mortgagor fails to make a statement or to ask for arbitration. On this point there is no express provision in the policy, and we must find our answer in its general language which indicates the purpose and intention of the parties. We are of opinion that the company does not undertake to pay anything to anybody until it has notice and reasonable information of the loss, and an opportunity to rebuild or repair the property if it

elects so to do, nor until the amount of the loss is determined by arbitration unless it is agreed upon or arbitration is waived. The contract of which the mortgagee has the benefit is a contract to pay only on these terms which appear in the substantive parts of the policy. It follows by implication, without an express provision, that the mortgagee has a right, in such a case, to make a statement of the loss and to ask for an arbitration. It is not that the express terms of the requirements upon the insured are directly applicable to him in all particulars, but that the contract contemplates action on his part, for his own protection, if the insured fails to take the action called for by the policy.

The statement mentioned in the policy is to contain facts, some of which are peculiarly within the knowledge of the insured, about which the mortgagee might know nothing. They are required of the insured because he is the insured, and is supposed to know them. The contract with the mortgagee does not require him to state facts of this kind. The policy requires the insured to make his statement forthwith after the fire. A mortgagee might not know of the fire for a long time after its occurrence. The implied contract between him and the company does not put upon him the obligation to make his statement forthwith after the fire, but it is enough if he makes it within a reasonable time, having reference to the fact that he is not expected to know of the fire immediately.*

The real question in a case of this kind is what are the implications to be derived from the policy, as to the contract between the company and a mortgagee in reference to whom there are no express requirements on this subject, and who is expressly protected from loss by the acts or defaults of the insured. We think the implication goes no further than to require him to furnish to the company in writing, within a reasonable time, proper information in regard to the loss, as to such matters as a

---

* It appeared from the agreed statement of facts that the fires causing the loss occurred on January 8 and 15, 1904, and that a statement in writing of the loss, sworn to by the plaintiff's treasurer, was delivered to the defendant's agents on May 9, 1904, and was received at the general offices of the defendant at Hartford on May 12, 1904. This was not made out on the defendant's blank form for proof of loss. The defendant's agents refused to furnish such a form, and declined to give any reason for the refusal.

mortgagee reasonably may be expected to know. It has been so held in regard to similar provisions in policies in other States. *Glens Falls Ins. Co.* v. *Porter*, 44 Fla. 568. *Dwelling House Ins. Co.* v. *Kansas Trust Co.* 5 Kans. App. 137. *Adams* v. *Farmers' Ins. Co.* 115 Mo. App. 21. *Queen Ins. Co.* v. *Dearborn Association*, 175 Ill. 115. *Nickerson* v. *Nickerson*, 80 Maine, 100. For a somewhat different view see *Southern Building & Loan Association* v. *Home Ins. Co*. 94 Ga. 167.

In the absence of an agreement as to the amount of the loss, or a waiver of arbitration, the appointment of arbitrators to determine the loss is a condition precedent to a right to recover. This is of the essence of the contract made for the benefit of the mortgagee. See *American Building & Loan Association* v. *Farmers Ins. Co.* 11 Wash. 619. Although the insured is to act in obtaining an arbitration, we are of opinion that his neglect opens to the mortgagee by implication the right to make the contract effectual in this particular.

The amount of the loss in the present case was not agreed upon or determined, and the plaintiff did not ask for an arbitration. This is fatal to the claim, unless there was evidence on which the jury might find a waiver by the defendant.

We are of opinion that there was not such evidence. A jury has often been permitted to infer a waiver of a special defence by an insurance company from very slight evidence. But we are not aware of any case in which such an inference has been allowed, under language like that in this policy, without proof of some conduct of the company bearing upon the particular defence. In the present case there was no word or act on the part of the company or any of its agents showing any attitude of the company as to the plaintiff's claim except that of standing on all its legal rights. Under such circumstances it cannot be found that there was a waiver of any part of its defence.

In *Hayes* v. *Milford Ins. Co*. 170 Mass. 492, the language of the policy was different and at first there was no question about the amount of loss. In *Lamson Consolidated Store Service Co.* v. *Prudential Ins. Co*. 171 Mass. 433, there was a positive denial of liability by the defendant, from which it might be inferred that there was a waiver of the right to arbitration to determine the amount of the loss. The cases of *Wainer* v. *Milford Ins. Co.*

153 Mass. 335, *Harris* v. *North American Ins. Co.* 190 Mass. 361, and *Westfield Cigar Co.* v. *Ins. Co. of North America*, 169 Mass. 382, are also distinguishable.

According to the terms of the report there must be a

*Judgment for the defendant.*

The case was argued at the bar in December, 1906, before *Knowlton*, C. J., *Hammond, Loring, Braley*, & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices.

*F. W. Brown*, for the defendant.

*E. F. McClennen*, (*H. F. Lyman* with him,) for the plaintiff.