Will A. Gilman,

Administrator of the Estate of George E. Gilman,

*vs.*

The Commonwealth Insurance Company of New York.

Cumberland.    Opinion December 31, 1914.

*Arbitration.    Cancellation of Policy.    Eviction.    Foreclosure.    Insurance on Dwelling House.    Mortgage Clause.    Mortgagee.    Payable to Mortgagee.*

When the policy of insurance in this case was issued to Frank T. Spear, the premises were under mortgage to George F. Gilman.   Upon the policy was the indorsement "Payable in case of loss to George F. Gilman, mortgagee, as his interest may appear."   At the request of Spear, the defendant company on April 15, 1911, cancelled the policy and notified Spear, and on the 26th day of September, 1911, the buildings insured were destroyed by fire.   Spear filed no proof of loss, but Gilman, the mortgagee, filed a proof of loss.

*Held:*

1.   That the policy in suit, by reason of the mortgage clause and by being made payable in case of loss to the mortgagee, as his interest may appear, contained, in addition to the contract with the mortgagor, a separate and independent contract whereby the mortgagee's interest was insured.

2.   The defendant had no right to cancel the policy, except by mutual consent of the insured, and the mortgagee, or by giving to the insured and the mortgagee ten days' notice in writing, as specified in the policy.

3.   The mortgagee's right to recover for the loss was not affected by the act of the insured and the defendant in its attempted cancellation of the policy.

4.   Attached to the policy in suit is a mechanic's permit dated October 15, 1909, giving permission for mechanics to work in and about the premises for two months from date, to make alterations and additions or repairs.   It was shown that the mortgagee did work on the house after the time specified in the permit, without increasing the risk to the extent that would avoid the policy.

5.   In making the changes and alterations testified to after the time limited in the mechanic's permit, without the assent of the defendant company, left it a question of fact for the jury whether the changes and alterations constituted such change of the situation or circumstances affecting the risk as to so alter the premises as to cause an increase of such risk.

On motion of defendant.    Motion overruled.

This is an action of assumpsit brought by Will A. Gilman, Administrator of the Estate of George E. Gilman, late of Scarboro, in the County of Cumberland, upon a policy of insurance issued by the defendant to Frank T. Spear, October 15, 1909, upon a one and one-half story dwelling house, situated in Scarboro aforesaid.    George E. Gilman, deceased, held a mortgage on said dwelling house, and the insurance was payable to him in case of loss, as his interest might appear.    The defendant, at the request of the insured, Frank T. Spear, cancelled the policy.    Plea, the general issue and brief statement.

The case is stated in the opinion.

*Foster & Foster, J. S. Thomas, and F. H. Purington,* for plaintiff.

*Harry L. Cram,* for defendant.

SITTING:    SAVAGE, C. J., KING, HALEY, HANSON, PHILBROOK, JJ. SPEAR, CORNISH, JJ.    Dissenting.

HALEY, J.    An action of assumpsit, upon a policy of insurance, of the Maine Standard form, issued by the defendant to Frank T. Spear, October 15, 1909, whereby the defendant insured the one and one-half story dwelling house situated in Scarboro for the term of three years, against loss or damage by fire to the amount of $800. There was an endorsement upon the policy as follows:    "Payable in case of loss to George F. Gilman, mortgagee, as his interest may appear."

When the policy was issued Mr. Spear was in possession of the insured premises, and remained in possession for about one and one-half years, when George F. Gilman, who held a mortgage of the premises to secure a debt of $900, took possession as mortgagee and evicted Mr. Spear.    On April 11th Mr. Spear requested the Insurance Company to cancel the policy.    On April 15th of that year they gave him written notice that they had cancelled the policy, as requested. September 26th, 1911, the buildings were destroyed by fire.    Soon after the fire Mr. Gilman learned that Mr. Spear and the Insurance Company claimed to have cancelled the policy without his, Gilman's, consent.    Mr. Spear neglected to furnish the Insurance Company a proof of loss, as called for by the policy, and October 19th, 1911, Mr. Gilman sent to the defendant a proof of loss.    Afterwards he served

notice upon the defendant in writing that he desired to have the amount of the loss settled by arbitration. The defendant paid no attention to either the proof of loss or the request for arbitration.

Shortly after the request to the Insurance Company to submit the question to arbitration, Mr. Gilman died and the plaintiff was appointed administrator of his estate and brought this suit upon the policy. The case was tried at the January term in Cumberland County, the verdict was for the plaintiff for the sum of $900.93, and the case is before this Court on a motion for a new trial as against law and evidence.

The defendant urges two reasons in support of its motion:

First,—Because the policy had, before the loss, been cancelled at the request of Mr. Spear.

Second,—Because the risk was increased by changes and alterations made to the buildings without the consent of the defendant.

First: The form of the Maine Standard Insurance policy, now contained in Sec. 4, Chap. 49, Revised Statutes, was prescribed by the legislature of 1895, before which it was held that an endorsement upon the policy of words making it payable in case of loss to a mortgagee, as his interest might appear, was not an insurance of the mortgagee's interest in the property, or an assignment of the policy to the mortgagee; that it was merely a contingent order, a stipulation assented to by the Insurance Company for the payment of the loss to the assured, if any, to the mortgagee; that it gave the mortgagee the same right to recover that the insured would have had if no such clause had been inserted in the policy; that any violation of the stipulations of the policy which would defeat the right of the insured to recover upon it would defeat the right of the mortgagee; that it was simply an order on the company to pay the amount of the loss to the mortgagee; that the insurance was upon the property of the mortgagor and not upon the interest of the mortgagee. *Savings Institution* v. *Insurance Company*, 68 Maine, 313; *Bank* v. *Insurance Company*, 81 Maine, 570.

The policy in suit is of the Maine Standard form and contains the agreements specified by Chap. 49 to be inserted in a fire insurance policy, among which are the following, spoken of in the opinions as the mortgagee clause, the union clause and the loss payable clause: "If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee

or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate; provided, that the mortgagee shall, on demand, pay according to the established scale of rates for any increase of risk not paid for by the insured; and whenever this company shall be liable to the mortgagee for any sum for loss under this policy, for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself or with others to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the companies interested, upon such payment, the said mortgage together with the note and debt thereby secured."

It is further provided in the policy that, "This policy may be cancelled at any time at the request of the insured, who shall thereupon be entitled to the return of the portion of the above premium remaining, after deducting the customary monthly short rates for the insured for the time this policy shall have been in force. The company also reserves the right, after giving written notice to the insured, and to any mortgagee to whom this policy is made payable, and tendering to the insured a ratable proportion of the premium, to cancel this policy as to all risks subsequent to the expiration of ten days from such notice, and no mortgagee shall then have the right to recover as to such risks."

The above mortgage clause is the same as the mortgage clause in the Massachusetts Standard Insurance Policy, and the same as was set forth in the policy in the case of *Whiting* v. *Burkhardt et als.*, 178 Mass., 535, which also contains the usual provisions that is should be void "if, without the assent of the company in writing or print, the said property shall be sold, or the policy assigned." One of the owners of the property conveyed his interest before the fire, and the suit was brought upon the policy by the mortgagee, and the Court say, page 539: "A conveyance by Guptil of his interest in the building insured did not affect the right of the plaintiff to recover in case of loss; it is provided in the policy that, 'if the policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate.'" The Court held that, although the conveyance by the owner of his interest would defeat his right to recover,

that it was no defense to a suit by the mortgagee named in the policy, because the policy contained a mortgage clause the same as the mortgage clause in the policy in suit.

In *Morey* v. *Reliance Insurance Company*, 208 Mass., 378, the Court held: "Because of the foreclosure of a later mortgage covering both estates worked a change in the title, all the policies became void in the hands of the original insurer, and the claim of the plaintiffs, as mortgagees under their earlier mortgage, rests upon the clause in the policy under our Massachusetts standard form, which protects the rights of the mortgagees in such cases." The Court held that the mortgagees could recover.

In *Hardy* v. *Lancashire Insurance Company*, 166 Mass., 210, the Court say: "The history of the provisions in the standard policy in favor of a mortgagee is well known. These provisions, in their present form are intended to afford to the mortgagee full indemnity to the extent of the insurance under his interest in the property, unless the policy is avoided by some act of his, or of his agents, or of those claiming under him, and the mortgagee in certain events comes under obligations to the insurance company to pay for any increase of risk and to assign to it his mortgage." . . . . "The policy of the Commonwealth, that such insurance shall not be avoided so as to affect the mortgagee's interest by the act of the mortgagor, is shown by the adoption of a standard form containing such a provision, and this is the form which mortgagees usually demand."

In *Eliot Five Cent Savings Bank* v. *Insurance Company*, 142 Mass., 142, the policy contained the same clause that is contained in the policy in suit; and the insured conveyed the property before the fire, without the assent of the company, and the Court said: "If we assume, as contended by the defendant, that the conveyance by George B. Taylor to Addie E. Taylor, without the assent of the company, avoided the policy as to them, yet, under the first clause (mortgage clause) above cited, it would not affect the right of the mortgagee to recover."

In *Union Institute* v. *Phenix Insurance Co.*, 196 Mass., 230, the mortgagor obtained insurance upon buildings, and there were endorsements making the loss payable to the mortgagee as his interest might appear. The policy was in the standard form, as the policy in this case. The mortgagee did not know of the insurance until after the fire, and the Court say: "The first question is whether the

plaintiff can avail itself of the contract thus made for its benefit? We think it plain that this question should be answered in the affirmative. Surbridge acted in part for himself and in part as an agent and representative of the plaintiff in procuring the policy. He must be held to have acted in same double capacity in receiving and holding it. This policy contained a contract between the defendant and Surbridge, and a somewhat different contract between the defendant and the plaintiff. . Both the mortgagor and the mortgagee were protected in their rights under their several contracts contained in the single paper signed by it. *Palmer Savings Bank* v. *Insurance Company*, 166 Mass., 194; *Hastings* v. *Westchester Ins. Co.*, 73 N. Y., 141; *Hartford Ins. Co.* v. *Olcutt*, 97 Ill., 439."

In *Eddy* v. *L. A. Corporation*, 143 N. Y., 311, Peckham, J., says: "The effect of the mortgage clause hereinbefore set forth is to make an entirely separate insurance of the mortgagee's interest, and he takes the same benefit from his insurance as if he had received a separate policy from the company, free from the conditions imposed upon the owners. The plain and obvious meaning of the language is that the insurance of the mortgagee shall not be affected or in anywise impaired or lessened by any act or neglect of the owner, although in the same policy issued to the owner, yet the insurer and the mortgagee were entering into a perfectly separate contract of insurance, by which the mortgagee's interest alone was to be insured, and it would be most natural to provide that no act or neglect of the owner should invalidate, that is, impair any portion of the insurance thus separately secured."

In *Hartford Fire Ins. Co.* v. *Williams*, C. C. A. 63, Fed., 925, it was held that, under the provision in the mortgage clause of a fire policy, the insurance as to the interest of the mortgagee should not be invalidated by any act or neglect of the mortgagor or owner, voluntary destruction by the owner would not prevent a recovery by the mortgagee.

In *Phenix Ins. Co.* v. *Omaha Loan & Trust Company*, 25 L. R. A., 679, the policy contained the following clause: "And if the property be sold or transferred in whole or in part without written permission in this policy, then, and in every such case, this policy is void."

It is also provided, in substance, as the Maine Standard form, as follows: "It is hereby agreed that this insurance, as to the interest

of the mortgagor only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured."

The insured conveyed his interest in the property, and the Court held that the mortgagee was entitled to recover upon the policy; that the contract with the trust company (mortgagee) was a separate and independent contract, and the right of the mortgagee to enforce it did not depend upon whether the owner had kept his engagements with the insurance company or not.

The case also cites several opinions holding the same doctrine.

In *Bacot* v. *Phenix Ins. Co.*, 25 L. R. A., (N. S.) 1226, it was held that, where a husband insured property as the owner when it was in fact owned by his wife, the policy as to him or his wife was void, but also held that, by reason of the mortgage clause attached to the insurance policy, under a statute providing that the insurance of the mortgage interest should not be invalidated by any act or neglect of the owner of the property, the mortgagee could recover upon the policy.

In the note to the case of *Bretch* v. *Law Union & Crown Ins. Co.*, reported in 18 L. R. A., (N. S.) 197, the editor, after reviewing many cases, states that the principle that under such a clause as is contained in the policy in suit, the rights of a mortgagee cannot be affected by any act or neglect of the owner, the mortgagor, occurring after the issuing of the policy, and cites many cases to support it, and concludes by stating (page 206), "the only difference of opinion which arises as to the effect of such clause occurs when the act of the mortgagor, which is relied upon to avoid the policy as to the mortgagee is some misrepresentation or concealment at the time of the issuance of the policy. The weight of authority, however, would seem to support the conclusion that the rule is the same under such circumstances."

An examination of the cases where the policies contained an endorsement making them payable in case of loss to the mortgagees, as their interests might appear, clearly shows that the rule of law declared in cases before the adoption of the Maine Standard form of policy does not apply to that form of policy, and that the policy in suit, by reason of the mortgage clause and by being made "payable in case of loss to George S. Gilman, mortgagee, as his interest may appear," contained in addition to the contract with Frank T. Spear a separate and an independent contract whereby the mortgagee's

interest was insured, and the defendant had no right to cancel the policy except by mutual consent of the insured, Mr. Spear, and the mortgagee, or by giving to the insured and the mortgagee ten days notice in writing, as specified in the policy, and that the mortgagee's right to recover for the loss was not affected by the act of the insured and the defendant in their attempted cancellation of the policy.

Second: That changes and alterations were made in and upon the building which were not permitted, and about which the defendant had no notice. Attached to the policy is a mechanic's permit, dated October 15, 1909, giving permission for mechanics to work in and about the premises for two months from date, to make alterations and additions, or repairs. It was shown by the testimony that Mr. Gilman, the mortgagee, did work on the house after the time specified in the permit. He laid new floors, changed the stairs, put up studding in the second floor, etc.

The defendant relies upon *Fire Insurance Co.* v. *Coos County*, 151 U. S., 452, which held that, if mechanics were employed in building, altering or repairing the premises without a building permit, the insurer was relieved from responsibility, although the fire did not occur in consequence of the alterations or repairs. The policy in that case provided that, "This policy shall be void and of no effect if, without notice to this company and permission therefor in writing indorsed hereon . . . , the premises shall be used or occupied so as to increase the risk, . . . or the risk be increased by any means within the knowledge or control of the insured, . . . or if mechanics are employed in building, altering, or repairing premises named therein, excepting in dwelling houses, except not exceeding five days in one year are allowed for repairs." The Court say: "The condition of the policy should be void and of no effect, if 'mechanics are employed in building, altering or repairing the premises named herein,' without notice to or permission of the insurance company, being a separate and a valid stipulation of the parties, its violation by the assured terminated the contract of the insurer, and it could not be thereafter made liable on the contract, without having waived the condition, merely because in the opinion of the court and jury the alterations and repairs of the building did not, in fact, increase the risk." The policy in suit does not contain the clause contained in the above mentioned policy that the policy should be void and of no effect if mechanics are employed in the building,

altering or repairing the premises named herein; but it does provide that "the policy shall be void if, without the assent of the insurer, the property shall be removed, except that if such removal shall be necessary for the preservation of the property from fire, this policy shall be valid without such assent after five days thereafter, or if, without such assent, the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency or consent of the insured be so altered as to cause an increase of such risk."

The attaching to the policy of the permit above referred to gave to the assured the right to employ mechanics in and upon the premises as specified in the permit for the period named in the permit without increasing the risk to the extent that would avoid the policy, and the making of the changes and alterations testified to after the time limited in the mechanic's permit, without the assent of the insurance company, left it a question of fact for the jury whether the changes and alterations constituted such a change of the situation or circumstances affecting the risk as to so alter the premises as to cause an increase of such risk. If it did not cause an increase of such risk, then it was not a forfeiture of the policy, and whether it was an increase of risk under the circumstances was a question of fact for the jury, and they were expressly instructed upon that branch of the case, and no exceptions were taken to such instruction, and we cannot say, from an examination of the evidence on this branch of the case, that they were not justified in finding that the alterations and repairs made by the mortgagee did not create an increase of the risk, but that they were such repairs and alterations as would ordinarily be expected to be made upon such premises, and that the Insurance Company so considered it when it issued the policy of insurance.

*Motion overruled.*

CORNISH, J. Dissenting.

I am unable to concur in this opinion so far as it relates to the question of cancellation. The precise question involved is this: Can a mortgagor who has taken out a policy of insurance upon his own property, in his own name, but payable, in case of loss, to a mortgagee as his interest may appear, and who has paid the premium, cancel the policy upon request made to the company without the assent of the mortgagee. The opinion holds that he has not this power and that notwithstanding his request the company has no right to cancel the policy without the consent of the mortgagee. This seems to me a forced construction of the plain and unambiguous words of a contract made by the parties, and sanctioned by the legislature.

The provision relating to cancellation, which has been a part of the Statutes of our State since the adoption of the standard policy in 1895, reads as follows:

"This policy may be cancelled at any time at the request of the insured, who shall thereupon be entitled to the return of the portion of the above premium remaining, after deducting the customary monthly short rates, for the time said policy shall have been in force. The company also reserves the right, after giving written notice to the insured, and to any mortgagee to whom this policy is made payable, and tendering to the insured a ratable proportion of the premium, to cancel this policy as to all risks subsequent to the expiration of ten days from such notice, and no mortgagee shall then have the right to recover as to such risks." R. S., Chap. 49, Sec. 4, par. VII. The first part of this provision covers voluntary cancellation by the insured, the second, voluntary cancellation by the company. We are concerned with the first part only. The words are direct and simple. The power of cancellation is given to "the insured." Who then is meant by "the insured," as the term is used in this contract? No room is left for conjecture. It is the party who effects the insurance and pays the premium which is the consideration of the contract in this case Frank T. Spear the mortgagor. The policy at its very inception so specifies: "In consideration of twelve dollars to it paid by the insured hereinafter named, the receipt whereof is hereby acknowledged, does insure Frank T. Spear and his legal

representatives" etc.  The policy itself therefore clearly defines the · term, and wherever the words recur throughout the policy they have the same meaning and refer to the same person.  It is true, as the opinion holds, that the mortgagee has certain rights under the standard policy given him by another provision which we shall discuss later, and in a certain sense his interest may be deemed to be protected or insured, but he is not the party insured designated by the statute as having the right to cancel the policy at any time at his own request.  To make him such or to place him beside "the insured" and say that the policy cannot be cancelled without his assent is in effect to give to the statute an interpretation antagonistic to its express language, and to couple with the visible and expressed mortgagor, an invisible and unexpressed mortgagee.  Such a result may be equitable and desirable, and therefore a matter for the consideration of the law making branch of the government, but it requires a severe wrenching of the statute to accomplish such a result without legislative amendment.

Further study of this cancellation section confirms our view. "The insured" is the party designated as entitled to a return of the unearned premium reckoned in the manner prescribed.  To return is to give back to the party making the original payment.  That party is entitled to the return and can sue the Company and recover if the Company should decline to pay.  The statute gives him that right and makes the unearned premium a debt which he and he alone can recover.  What rights has the mortgagee in that unearned premium?  He has paid no part of it.  Can he maintain an action for it?  Certainly not.  What stumbling block can he put in the way of the mortgagor who seeks to recover it?  None whatever, because the contract says the insured is "entitled" to it.  But if the mortgagee can prevent the cancellation by withholding his assent, he most effectually debars the mortgagor from receiving what is his legal due.  For it scarcely could be contended that the mortgagor could receive his premium which was the consideration of the policy, and yet the policy would remain alive and valid as to the mortgagee. If so, at whose expense would it be running?  Not at the mortgagor's because his premium has been returned.  Not at the mortgagee's, because it is not claimed that he is in any way liable therefor.  We should then have the dilemma of a policy existing and in force at no one's expense.  Such a situation is impossible.  The power of can-

cellation and the right to the return of the unearned premium are inseparable, and they belong to one and the same person, and that person is he who effected the insurance.

That the legislature regarded "the insured" as distinct from the mortgagee, and used the term advisedly in designating him as the party having the power of cancellation is also apparent from the second part of the cancellation provision, permitting cancellation by the company. Here the rights of the mortgagee are recognized and expressly reserved in contradistinction to those of the mortgagor, because the Company can cancel only "after giving written notice to the insured, and to any mortgagee to whom this policy is payable" etc. Here the distinction between the two is sharply drawn. "The insured" is the mortgagor, as distinct from the mortgagee. Written notice must be given to both, but in the next clause it is provided that the Company must at the same time tender "to the *insured* a ratable proportion of the premium" etc. Notice must be given to both, but payment or tender made only to one. We cannot conceive how the English language could have been used with keener discrimination in specifying the rights of both the insured and the mortgagee, and yet the opinion holds that while the contract provides that "the policy may be cancelled at any time at the request of the insured," yet the company has no right to cancel it, notwithstanding this request, except by mutual consent of the insured and the mortgagee. The legislature might have so enacted but clearly it did not. It recognized the rights of the mortgagee in cancellation by the company but not in cancellation by the insured. The line of cleavage is well defined.

Passing now from the particular cancellation clause to the entire policy, and applying the familiar rule as to the force of the context, our construction is further confirmed. The words "the insured" occur twenty-one times in the policy, and confessedly in the other twenty instances they refer to the party effecting the insurance, the mortgagor. On what ground can it be made to apply to another and unnamed party, the mortgagee, in the twenty-first?

The Massachusetts Court, in construing the words "the insured" in connection with the proofs of loss and the provisions for arbitration in a standard policy like our own, note the distinction between "the insured" and the mortgagee in these words:

"It is quite certain that the party referred to as 'the insured' in these provisions is the mortgagor. The contract calls for but one such statement, and if the duty of furnishing it is upon the mortgagee when the loss is payable to him then there is no such duty upon the mortgagor. The paper must be 'signed and sworn to by the *insured,*' it must set forth the 'interest of the *insured* therein,' and various other stipulated facts which are peculiarly within the knowledge of the mortgagor 'so far as known to the *insured.*' The mortgagee is referred to in the policy in contradistinction to the insured, in different parts of the policy. The mortgagee, to secure his rights in that capacity, must pay on demand 'for any increase of risks not paid for by the *insured.*' The Company reserves the right to cancel the policy 'after giving written notice to the insured and to any mortgagee, etc. In the clause reciting the consideration the company 'does insure' . . . . the mortgagor." *Union Inst. for Sav.* v. *Ins. Co.,* 196 Mass., 230-233. To the same effect is *Collinsville Savings Soc.* v. *Ins. Co.,* 17 Conn., 676, where the Court say: "On the other hand it is not easy to discover upon what theory it can reasonably be claimed that a person who has not come into contractual relations with the insurer, who has obtained no insurance protection, and who is only an appointee of the owner as respects whatever may become due under the contract of insurance, to which he is a stranger, acquires the right, even by indirection, to assume the title of 'the insured.' If we look for other provisions which may serve, by way of implication or otherwise, to give him a standing in the adjustment of a loss, we find only that the word "insured" whenever used in the policy should be construed to include the legal representatives of the insured and nothing more. It appears therefore that the right to participate in an adjustment of a loss under this policy and indorsement, has by the parties to the contract been limited to the insurer, the property owner and his legal representatives."

For the reasons thus set forth I am of opinion that the language of the cancellation clause is unambiguous, and the rights thereby conferred upon the insured are not to be challenged unless we judicially amend it by inserting after the words "the insured" the words "with the consent of the mortgagee," so that said clause as amended shall read, "This policy may be cancelled at any time at the request of the insured with the consent of the mortgagee" etc. This I am reluctant to do.

The other section of the policy upon which the reasoning of the opinion rests, if I understand it correctly, is as follows: "If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate, provided that the mortgagee shall, on demand, pay according to the established scale of rates for any increase of risk not paid for by the insured;" etc.     The rights of the mortgagee under this clause are protected, as the opinion holds, and no act or default of the mortgagor or of any other person than the mortgagee, either before or after the loss, can abridge or destroy them.     That however does not refer to the cancellation of a policy which is expressly permitted under another section.     A cancelled policy is one thing, a broken policy quite another.     The "act or default" intended by this provision concerns such acts or defaults as would work a breach of the policy as to the mortgagor.     It may be some positive act, an act of commission on the part of the mortgagor, as the sale of the premises, or procuring additional insurance, or even the voluntary destruction of the property; or it may be his failure to do something, an act of omission on his part, as the neglect to furnish proof of loss after fire  has occurred.     All these and similar instances come within the scope of this "act or default" clause, and under one class or the other falls every case cited in the opinion.     Thus the conveyance of the property by the mortgagor in *Eliot Sav. Bank* v. *Ins. Co.*, 142 Mass., 142; *Palmer Sav. Bank* v. *Ins. Co.*, 166 Mass., 189; *Whiting* v. *Burkhardt*, 178 Mass., 535; *Union Inst. for Savings* v. *Ins. Co.*, 196 Mass., 230; and *Phoenix Ins. Co.* v. *Omaha Loan & Tr. Co.*, (Neb.) 25 L. R. A., 679; the foreclosure of a later mortgage working a change in the title, *Morey* v. *Ins. Co.*, 208 Mass., 378; the procuring of additional insurance by the mortgagor, *Hardy* v. *Ins. Co.*, 166 Mass., 210; *Hastings* v. *Ins. Co.*, 73 N. Y., 141; *Eddy* v. *Ins. Co.*, 143 N. Y., 311; *Hartford Fire Ins. Co.* v. *Olcott*, 97 Ill., 439; incorrect description of interest or misrepresentations, *Bacot* v. *Phoenix Ins. Co.*, (Miss.) 25 L. R. A., N. S., 1226; the voluntary destruction of the premises by the mortgagor, *Hartford Fire Ins. Co.*, v. *Williams*, 63 Fed., 925; and his failure to furnish proof of loss, *Union Inst. for Savings* v. *Ins. Co.*, 196 Mass., 230.     This covers every citation in the opinion on this branch of the case except the Editor's note to *Bretch* v. *Law*

*Union & Crown Ins. Co.*, 18 L. R. A., N. S., 197, and that, like the others, refers only to the "effect or breach of policy of insurance by mortgagor on rights of the mortgagee." From none of these decisions do we dissent; with all of them we agree; but we fail to see their application to the case at bar.

They all refer to the effect on the mortgagee of the breach of the conditions of the policy by the mortgagor, not to the cancellation of a policy, and the gulf between the two is not bridged. The purpose of this "act or default" clause is apparent. Prior to its adoption the Courts held that the clause "payable in case of loss to a mortgagee as his interest may appear" merely constituted the mortgagee an appointee to receive the insurance in case of loss, and a violation of any of the terms of the policy by the mortgagor, such as transfer of title, procuring additional insurance, fraud in proof of loss, etc., avoided the policy not only as to the mortgagor, but also as to the mortgagee. The rights of the mortgagee fell with those of the mortgagor. This Court had so held. *Brunswick Savings Inst.* v. *Ins. Co.*, 68 Maine, 313; *Biddeford Savings Bk.* v. *Ins. Co.*, 81 Maine, 570. To prevent this result, and to remedy this apparent injustice, the "act or default" clause was inserted in the standard policy, and thereby the interest of the mortgagee is protected, notwithstanding the conduct of the mortgagor may have been such as to forfeit his own. No longer can the mortgagor's wrong doing imperil the rights of the mortgagee. In this sense the mortgagee's interest is covered by the policy, but in no other, and all the cases cited in the opinion are but illustrations of the various phases in which this single question has been presented to the Courts. In discussing the scope of this protection the Courts have sometimes used broad language, as the quotations in the opinion show, but in each instance it was used with reference to the "act or default" clause then under consideration, and in no way involved the rights of the parties under the independent clause governing cancellation. No cited case, and no other that we have been able to find, has declared the doctrine sought to be established in the opinion.

If the logic of the opinion on this branch of the case is that no act of the mortgagor can affect the mortgagee's right of recovery, and that the request for cancellation was such an act, the fallacy of the argument is obvious. The act of the mortgagor contemplated by the clause is, as we have seen, such as would constitute a breach of

the contract on his part, a prohibited act, an unauthorized act. But the request for cancellation is a contract right, expressly reserved to the insured by another provision when the policy is issued. It is a statutory right, an authorized privilege of which he cannot be deprived. Under what rule of construction can an act expressly authorized under one provision of a contract be converted into a prohibited act under another provision? How can a contract-authorized act be transformed into a contract-breaking act? Such a position is manifestly untenable.

Our conclusion therefore is, that however desirable it might be to couple the power of cancellation on the part of the mortgagor, with the consent of the mortgagee, the legislature, thus far, has failed to do so, but has left the power in the hands of the mortgagor alone, and his request for cancellation is a contract right which, when exercised by him, ipso facto works a cancellation of the policy. *Lipman* v. *Ins. Co.*, 121 N. Y., 454; *Crown Point Co.* v. *Ins. Co.*, 127 N. Y., 608; *Ins. Com'r.* v. *Ins. Co.*, 68 N. H., 51; *Parsons* v. *Ins. Co.*, 133 Iowa, 532, (110 N. W., 907); Richards Ins., Sec. 287.