**Arnold GOODMAN, Plaintiff,**

v.

**QUAKER CITY FIRE & MARINE IN-
SURANCE COMPANY,**
Defendant.

**Civ. A. No. 54–873.**

United States District Court
D. Massachusetts.

April 18, 1956.

Robert M. Morrison, Morrison, Ma-
honey & Pearlman, Edward Wolper, Bos-
ton, Mass., for plaintiff.

Brickley, Sears & Cole, Howard W. Cole, Charles W. O'Brien, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff sues for a fire loss under an insurance policy allegedly effected between the defendant and one John Julian Jenkins. The plaintiff is the assignee of the policy and his rights are determined by the relation between Jenkins and the Insurance Company. Jurisdiction rests upon diversity of citizenship.

### Findings of Fact

The facts establish that on April 20, 1951, Jenkins gave a mortgage of Six Thousand Dollars ($6,000) on his dwelling house to the Brighton Cooperative Bank, as security for a loan of Six Thousand Dollars ($6,000) from the bank, in which mortgage he authorized the bank to maintain adequate fire insurance on the realty. Subsequently, Jenkins gave a second mortgage to Carl Goodman. At some time prior to August 5, 1953, Goodman foreclosed his mortgage and purchased the equity of redemption, so that on August 5, 1953, Jenkins had neither legal nor equitable title, possession, nor right of possession in the realty. Insurance had been contracted in Jenkins' name, as assured, in the amount of Six Thousand Dollars ($6,000) payable to "1st: Brighton Cooperative Bank, Allston, Mass.," and "2nd: Carl Goodman, * * *". As a result of application to renew this policy on August 5, 1953, the bank received a Massachusetts Standard Policy on the dwelling house again stating that Jenkins was the assured, and payable to the Bank and Carl Goodman in that order. This policy was to become effective on August 30, 1953. Premiums were tendered by the bank and retained by the Company.

On October 13, 1953, the realty was destroyed in major proportion by fire. An agent of Carl Goodman notified the company of the fire and requested a decision as to whether the property was covered by the defendant, to which the defendant replied in the negative. The defendant's refusal to adjust and to pay are based on the argument that no valid contract came into existence on August 30th or on August 5th because the alleged principal, John Julian Jenkins, held no insurable interest in the property, and that the defendant was not accorded its right to notice and proof of loss. The plaintiff claims that Jenkins' continued liability on the note and first mortgage were of such beneficial interest as to be insurable.

Examination of available Massachusetts law has failed to disclose a decision by the state's highest court on the specific question. The question being one of substance, I must apply rules I would expect to be employed were the question to be decided by that court. 28 U.S.C.A. § 1652; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S. Ct. 176, 85 L.Ed. 109.

The rationale of the Massachusetts cases is that a party has an insurable interest in property if he derives a benefit from its continued existence, or would suffer a loss by its destruction. Eastern Railroad Company v. Relief Fire Insurance Company, 98 Mass. 420. This principle has received consistent application in succeeding cases, Williams v. Roger Williams Ins. Co., 107 Mass. 377; Doyle v. American Fire Insurance Co., 181 Mass. 139, 63 N.E. 394; Shumway v. Home Fire & Marine Ins. Co., 301 Mass. 391, 17 N.E.2d 212. It is a flexible principle, and it received liberal employment in Womble v. Dubuque Fire & Marine Ins. Co., 310 Mass. 142, 37 N.E. 2d 263, where the court found an insurable interest in the form of continued occupancy by an unincorporated religious association of a building owned by an incorporated society. The measurable value of the association's interest was its prospect of being able to remain in the established location.

However, in the case at bar, Jenkins' only relation with the bank and the property was that his liability on the note survived the foreclosure and sale by the

second mortgagee, and the extinction of his equity. It must be noted that under the Massachusetts law of property, the assured had no interest surviving in the realty, for the foreclosure by Goodman and the purchase of Jenkins' equity of redemption removed all interest and rights in the property, regardless of his continuing liability on the note. See Mitchell v. Wright, 234 Mass. 458, 125, N.E. 638. However, had Jenkins elected to pay the amount of the note for which the mortgage was security, and remained a charge upon the land then he could have taken an assignment of the mortgage and debt, and enforced the mortgage against the owner of the equity of redemption. Pratt v. Buckley, 175 Mass. 115, 55 N.E. 889. I consider that under Massachusetts case rationale, this relationship between Jenkins and the realty would be construed as an insurable interest, were the facts and the question to be decided by the courts of this Commonwealth. This ruling is within the rule pronounced in Union Institution for Savings v. Phoenix Insurance Co., 196 Mass. 230, 81 N.E. 994, 14 L.R.A.,N.S., 459, as to insurable interest.

 The defendant contends that in any event there was not sufficient notice of loss given to protect the rights of all parties in an adjustment of the loss. By the policy the insured was required to furnish "forthwith" a sworn statement in writing, signed by the insured, "setting forth the value of the property described, the interest of the insured therein, all other insurance thereon in detail, the purposes for which and the persons by whom the building described, or containing the property described was used, and the time at which and the manner in which the fire originated, so far as known to the insured." The policy gave the company the option to pay the loss or to rebuild, and provided for reference to referees constituted by the company and the insured. The mortgagee was held not liable for the act or default of the insured. The correspondence between Goodman's agent and the defendant, commencing with Goodman's inquiry dated November 25, 1954, falls far short of the requisite notice. Goodman was not the agent of the insured, or of the bank, nor did his inquiry approach the character of notice as defined by the policy. There was no agreement as to amount of loss, nor did the insured or the mortgagee demand arbitration. By their failure to submit notice and demand for arbitration "forthwith", as it is stated in the policy, both the mortgagor and the mortgagee forfeited any claim for loss which they may have established against the defendant. Union Institution for Savings v. Phoenix Insurance Co., supra. In that case, the court held that in the absence of a statement by the mortgagor, it devolves upon the mortgagee to submit a statement of the facts so far as he would be expected to know them within a reasonable time after the fire. The mortgagee never made such a statement, and it was not until March 10, 1955, that the plaintiff, as assignee of the mortgage, note, and policy, taken from the bank, demanded coverage for the loss. This letter was but a summary demand for payment, and cannot be held to have satisfied the gap left by the bank in its failure to act within a reasonable time after the loss.

 The plaintiff loses the benefit of the saving provisions of General Laws of Massachusetts (Ter.Ed.) Chapter 175, § 102, as amended St.1934, c. 110, § 1, due to the lack of notice to the defendant by a party responsible for notifying it, and because there is no evidence that the defendant initiated action to investigate or adjust the loss of its own motion.

### Conclusions of Law

I find and rule that the failure by the insured and the mortgagee to satisfy the notice section of their contract forfeited any claim either may have had against the defendant. The plaintiff, assignee of the mortgage, acquired no right superior to the insured or the mortgagee.

Judgment must be entered for the defendant.