0142

FORT HILL FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Respondent, v. SOUTH CAROLINA FARM BUREAU INSURANCE COMPANY and Hartford Accident and Indemnity Company of whom Hartford Accident and Indemnity Company is also a Respondent, and South Carolina Farm Bureau Insurance Company is Appellant. Appeal of SOUTH CAROLINA FARM BUREAU INSURANCE COMPANY.

(316 S. E. (2d) 684)

Court of Appeals

*Love, Thornton, Arnold & Thomason,* Greenville, *for appellant.*

*Olson, Lindsay & King,* Clemson, *for plaintiff-respondent.*

*Rainey, Britton, Gibbes & Clarkson,* Greenville, *for defendant-respondent.*

Heard Feb. 1, 1984.

Decided April 2, 1984.

GARDNER, Judge:

Respondent Fort Hill Federal Savings and Loan Association seeks a declaratory judgment that appellant South Carolina Farm Bureau Insurance Company is liable to it on a fire insurance policy issued to a Mr. and Mrs. Johnston. The policy contained a standard mortgagee clause naming Fort Hill as loss-payee. The Johnstons gave a bad check for the premium and by separate action Farm Bureau was absolved of liability to the Johnstons. The appealed order held Farm Bureau liable to Fort Hill.

We affirm.

Pertinent facts are: (1) upon receipt of the Johnston check, Farm Bureau, on October 5, 1979, issued the fire insurance policy, effective August 25, 1979; (2) the check bounced, was returned by Farm Bureau to the bank and bounced again and was returned to Farm Bureau after a fire destroyed the insured property on October 3, 1979; (3) the premium was never paid on the policy and Farm Bureau neither demanded payment of the policy premium from Fort Hill nor cancelled the policy as to Fort Hill prior to the fire; (4) in early November 1979, Farm Bureau mailed a notice of cancellation to the Johnstons cancelling the insurance as to the Johnstons as of August 25, 1979, the inception date of the policy; at the same time Farm Bureau mailed Fort Hill a cancellation notice cancelling the insurance as to Fort Hill effective November 14, 1979; (5) Hartford Accident and Indemnity Co., is a party to this action because it insured Fort Hill by an errors and omissions policy; (6) Pertinent parts of the policy are:

Loss, if any, under this policy, shall be payable to the aforesaid as mortgagee (or trustee) as interest may ap-

pear ... and this insurance, as to the interest of the mortgagee (or trustee) ... *shall not be invalidated by any act or neglect of the mortgagor or owner ... provided, that in case the mortgagor or owner, shall neglect to pay any premium* due under this policy the mortgagee (or trustee) shall, on demand, pay the same. (Emphasis ours.)

\* \* \* \* \* \*

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

On appeal Farm Bureau contends that the trial court erred (1) in determining that an independent contract existed between Farm Bureau and Fort Hill where there was a total absence of consideration and (2) in determining that the mortgagee clause was viable, since, in the absence of consideration, there was no estoppel upon which Farm Bureau could be held liable.

Farm Bureau premises its case by the assertion that in this state, a mortgagee named in the standard mortgagee clause of a fire insurance policy is simply a third party beneficiary of the contract between the insured and the insurer. From this premise, Farm Bureau asserts the contract was void *ab initio* as to Fort Hill because of the Johnstons' failure to pay the premium. We disagree. In the case of *Prudential Insurance Co. v. Franklin Fire Insurance Co. of Philadelphia,* 180 S. C. 250, 185 S. E. 537, the nonpayment of the premium by the insured was held not to vitiate the policy as to the mortgagee unless the mortgagee had failed to pay the premium after demand. Farm Bureau did not demand payment by Fort Hill. We hold the policy was not vitiated as to Fort Hill by the failure of the Johnstons to pay the premium.

Moreover, we find easily understood language in Farm Bureau's policy whereby Farm Bureau acknowledges that Fort Hill occupies a status with respect to the insurance independent of the insureds and their failure to pay the policy premiums. We quote:

*If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee,* be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. (Emphasis ours.)

This language is bolstered by the inclusion of separate cancellation clauses for the Johnstons and Fort Hill. They are:

Cancellation of policy. This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving *to the insured a five days' written notice of cancellation with* or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. (Emphasis ours.)

Mortgagee interests and obligations. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, *such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.* (Emphasis ours.)

Farm Bureau's actions were consistent with the true meaning of the two cancellation clauses. The company mailed a cancellation notice with two effective cancellation dates: the first cancelled the Johnstons' coverage as of August 25, 1979, the other cancelled Fort Hill's coverage on November 14, 1979 — long after the fire. Noted on the notice of cancellation under the word "reason" are the words "flat cancellation insufficient funds." Obviously Farm Bureau elected to forego demand of Fort Hill for payment of the premium and to cancel the policy as to Fort Hill and it had this right. The right, however, was subject to the mortgagee cancellation clause and, therefore, the cancellation date had to fall after the fire. All this reveals the separate status of a

mortgagee under the contract. Even though the policy might be void *ab initio* as to the Johnstons because of nonpayment of the premium, it remained viable as to Fort Hill until cancelled in accordance with the mortgagee cancellation clause.

We do agree with Farm Bureau, however, that in South Carolina we do not fully accept the majority rule that a standard mortgagee clause creates a distinct and independent insurance contract. Our distinction is nice. A mortgagee's rights under a fire insurance policy are dependent upon the existence of a secured debt owed the mortgagee by the mortgagor-insured; to this extent the mortgagee cannot be independent of the insured. But assuming the existence of the debt, these fire insurance policies are bifurcated, i.e., they have separate consideration clauses, separate cancellation clauses, separate claim-payment provisions and, as noted, a clause clearly anticipating situations of non-liability to the insured and clear liability to the mortgagee. The mortgagee in this state occupies a unique position; his status is separate from the mortgagor and this status is so independent that no act or neglect by the mortgagor can derogate this status provided that if the mortgagor fails to pay the premium, the mortgagee will on demand.

Farm Bureau's position that the mortgagee is simply a third party beneficiary is based upon a misinterpretation of an old case, *Walker v. Queen Insurance Co., et al.*, 136 S. C. 144, 134 S. E. 263 (1926). We first observe that the syllabi of *Walker* are inconsistent with the holdings of the case. The principal question in *Walker* was that of subrogation. In *Walker* the insured, who was barred from recovery by the breach of a condition, attempted to recover from the insurance company by paying the mortgagee the indebtedness due and then having the mortgagee assign her right of action under the mortgagee clause to her (the insured). The court in *Walker* rejected this maneuver of Mrs. Walker to acquire by subrogation a right she did not have as an insured and held that a subrogration which would work an injustice to a party against whom it was claimed or deprive him of legal or equitable rights will not be decreed.

*Walker* is not authority for the proposition that in South Carolina the mortgagee in these situations is merely a third party beneficiary of the insured's contract with the insurer.

*Walker* places the mortgagee on a higher plane. At the outset, the writer of the majority opinion of *Walker* states: "As between the insurance company and the mortgagee, under the mortgage clause, the mortgagee occupies a much more favorable position than the mortgagor or owner." Then *Walker* defines the mortgagee as a peculiar type third party beneficiary whose rights are superior to, independent of and separate from the rights of the insured, the primary conractor. The writer of the majority opinion of *Walker* veers from the ordinary third party beneficiary thesis. We quote from *Walker:* "the standard mortgagee clause 'must' establish for a mortgagee under such conditions a status with respect to the insurance which is *not only independent of, but also superior to that* of the property owner . . . he acquires *rights of his own* which are subject to no man's control, and which give him *independent* and *distinct protection,* [although] not an independent and distinct contract." (Emphasis ours.) This language is antithetic to the ordinary third party beneficiary rule; it holds that the mortgagee occupies a superior position to the insured — not a derivative or inferior one.

*Prudential v. Franklin, supra,* while not addressing *Walker,* refined and extended our rule in these cases by recognizing that there is a condition-precedent prescribed in securing the mortgagee's independent status, i.e., the payment of the premium when demanded by the insurer. *Prudential v. Franklin,* thus holds that the consideration for the independent status of the mortgagee is a promise for a promise. The insurance company promises payment of the mortgagee's valid claim and the mortgagee promises payment of the premium upon demand. And this in substance is the answer to Farm Bureau's contention that the Johnstons' failure to pay the premium vitiates Fort Hill's rights under the policy. There are separate consideration clauses for the insured and the mortgagee and no neglect — in paying the premium or otherwise — by the Johnstons vitiates Farm Bureau's rights under the policy, and we so hold.

The writer concludes there is, in reality, only a semantic difference in the South Carolina rule and the majority rule that the mortgagee clause creates a distinct and independent contract. Our court wisely reserves certain conditions and subrogation rights, but absent these consider-

ations, our rule vests the mortgagee with a status which includes all of the rights incident to an independent and separate contract and the insured can do nothing either by act or neglect which will divest him of these rights other than payment in full of the mortgage indebtedness.

Farm Bureau also argues a proposition of law novel to ■ this state, i.e., in the absence of Fort Hill's having knowledge of the insurance policy before the fire, there was no meeting of the minds — no agreement — no contract. On first blush, this seems logical and in accordance with basic contract law; but the universal, or near universal, conclusion of authority is contra. The law makes the insured the agent of the mortgagee in reaching the agreement, this in spite of the fact that as to the insured the contract may fail because of some breach of condition by the insured. From *Federal Land Bank v. Atlas Assurance Co.*, 188 N. C. 747, 125 S. E. 631 (1924), we quote:

> The Atlas Company also takes the position that, as the Federal Land Bank of Columbia had no knowledge of the existence of the policy issued until after the buildings had been destroyed by fire ... the same may not now, after a loss has occurred, be accepted and ratified by the said beneficiary under the standard mortgage clause attached thereto.... The contract of insurance was procured by C. C. Greenwood, who had an insurable interest in the property at the time, and who had a right to enter into the contract. The policy was issued with a rider or standard mortgage clause, attached thereto, in which the Federal Land Bank of Columbia, as mortgagee or trustee, was named as the first beneficiary as its interest might appear. This was a completed contract entered into by parties *sui juris*.... In short, it was a contract of insurance for the benefit of all who were interested in the property. The fact that the policy may be avoided as to Greenwood, the assured, does not necessarily render the contract made for the benefit of the mortgagees or trustees, unenforceable or void.... Nor did it require an acceptance on the part of the mortgagees or trustees to complete the contract. It was made by competent parties for their benefit, as their interests might appear, and it was expressly agreed by the Atlas Company that "this

insurance, as to the interest of the mortgagee, or trustee, only herein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property."

125 S. E. at 634. *See also Union Institution for Savings v. Phoenix Insurance Co.,* 196 Mass. 230, 81 N.E. 994 (1907).

The annotators of the law concur in the above. In an annotation, "Mortgagee's knowlege or acceptance of mortgagee clause before loss, as condition of his right to benefit of it," 132 A.L.R. 355 (1941), the author concludes:

> Where a mortgagor has an insurance interest in property, and an insurance policy is taken out by him containing a mortgage clause naming the mortgagee of the property as a beneficiary, the mortgagee may recover on the policy although he had no knowledge of the clause's existence prior to the loss of the insured property, acceptance of the policy by the mortgagee not being required to complete the contract of insurance.

132 A.L.R. at 355.

This court holds that lack of knowledge by Fort Hill of the insurance contract neither vitiates the contract nor absolves Farm Bureau of liability to Fort Hill. We additionally observe there is credible evidence of record that Farm Bureau before the fire notified Fort Hill of the coverage it had bound.

We hold for the reasons stated, that the trial judge did not err as contended by Farm Bureau in the two questions presented. The viability of Fort Hill's rights under the policy remain intact even though the Johnstons failed to pay the premium, and we so hold.

For the reasons set forth, the appealed order is

Affirmed.

CURETON and GOOLSBY, JJ., concur.