11914

## WALKER v. QUEEN INSURANCE COMPANY *ET AL.*

### (134 S. E., 263)

1. SUBROGATION.—Mortgagor, having paid mortgage after destruction of property, *held* not entitled to subrogation to rights of mortgagee under standard mortgage clause in policy free from defenses available against her in her own right.

2. SUBROGATION.—"Subrogation" is equity by which person secondarily liable for debt after payment is put in place of creditor.

3. SUBROGATION.—That payment of mortgage after destruction of property was for purpose of enabling mortgagor to sue insurer did not change primary obligation of mortgagor thereon, so as to entitle her to subrogation to rights of mortgagee.

4. INSURANCE.—Under Code Civ. Proc. 1922, § 356, mortgagor, on refusal of mortgagee to proceed against insurer under standard mortgage clause in policy, had right to bring action against mortgagee and insurer to compel collection and application on mortgage.

5. INSURANCE.—Insurer *held* not to have assumed payment of mortgage debt by issuance of policy with standard mortgage clause therein.

6. MORTGAGES.—Mortgagor becomes secondarily liable for mortgage debt after conveyance of mortgaged premises subject to mortgage, or on assumption thereof by grantee.

7. MORTGAGES.—Mortgagor, contracting with third party to assume payment of mortgage, and retaining title, does not assume position of secondary obligor, unless contract was made with knowledge of mortgagee and accepted by him.

8. INSURANCE.—Standard mortgage clause in insurance policy *held* not to constitute new and independent contract between insurer and mortgagee.

9. INSURANCE.—Open mortgage clause in policy does not create new and independent contract between insurer and mortgagee.

10. INSURANCE.—Rights of mortgagor in policy after discharging mortgage arises not from subrogation to rights of mortgagee, but from restoration of rights as insured.

11. SUBROGATION.—Subrogation which will work injustice to party against whom it was claimed or deprive him of legal or equitable right will not be decreed.

12. INSURANCE.—Insurer *held* not liable under policy prohibiting other insurance without agreement, where other insurance was taken out without agreement or waiver by insurer.

13. INSURANCE.—Under Civ. Code 1922, § 4095, insurer under valued policy *held* liable only for proportionate sum of policy as compared to agreed valuation, where there was other insurance.

Before WHALEY, J., Richland, September, 1924. Reversed and remanded for judgment.

Action by Lula A. Walker, against the Queen Insurance Company and others. Judgment for plaintiff and defendant named appeals.

*Mr. Frank G. Tompkins,* for appellant, cites: *Subrogation:* 120 S. E., 64; 34 S. C., 377; 32 S. C., 488; 37 Cyc., 363 and 374. *Additional insurance without notice to prior insurer:* 106 S. C., 467; 100 S. C., 49; 83 S. C., 262; 68 S. C., 39; 26 C. J., 256. *Losses prorated between insurers:* 100 S. C., 47; 68 S. C., 391; 57 S. C., 347; Civ. Code, 1922, Sec. 4095. *Policy held by agent as custodian for insured:* 68 S. C., 391.

*Messrs. Graydon & Graydon,* for respondent, cite: *Priority of trial of legal and equitable issues:* 93 S. C., 352; 84 S. C., 369; 80 S. C., 260; 61 S. C., 1; 42 S. C., 92. *Exception argumentative and assigning more than one error:* 124 S. C., 458; 123 S. C., 21; 111 S. C., 163; 90 S. C., 7; Rule 5 of Supreme Court, 1922. *Insurer after payment of loss is subrogated to rights of insured:* 41 S. C., 408. *Mortgagee's contract with insurer independent of mortgagor's control:* 142 Mass., 142; 122 Mass., 165; 119 Mass., 240; 175 Ill., 115; 51 N. E., 717; 97 Ill., 449; 44 Fla., 568; 47 Neb., 717; 66 N. W., 647; 58 A. S. R., 663; 36 L. R. A., 673; 73 N. Y., 141; 19 Hum. (N. Y.), 287; 2 Gray, 216; 86 Minn., 486; 91 N. W., 5; 91 A. S. R., 370; 25 Wash., 447; 9 P., 785; 55 L. R. A., 165; 27 L. R. A., 614; 25 L. R. A., 679; 19 Cyc., 714; Elliott on Insurance, 379. *Prerequistes to right of subrogation:* 120 S. C, 42. *Mortgage will be kept in force for benefit of party paying debt:* 2 Story Eq. Jur., 14th Ed., 707; 3 Pomeroy Eq. Jr.,

Sec. 1205 and page 190. *Common form of mortgage clause:* Elliott on Insurance, 379. *Taking out additional insurance did not make prior policy void:* 143 N. Y., 311; 25 L. R. A., 686. *Different policies must be on same interest to permit apportionment of loss:* 88 N. Y., 592; 27 L. R. A., 614. *Right to proofs of loss waived:* 115 S. C., 53; 67 S. C., 406; 55 S. C., 589.

February 2, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

I do not agree with the conclusion announced in the opinion of Mr. Justice Watts; on the contrary, I am convinced that the Presiding Judge wrongly directed a verdict in favor of the plaintiff, and should, at least, have submitted to the jury the defenses interposed by the insurance company. I will endeavor to make the grounds of this conviction intelligible.

This is an action upon a policy of fire insurance issued July 21, 1921, to T. J. Walker, husband of the plaintiff, Lula A. Walker, in the sum of $2,000, covering a dwelling house in the City of Columbia, which was totally destroyed by fire on March 21, 1923.

It is conceded that although the policy was issued in the name of T. J. Walker, the title to the property was in his wife. At the hearing of this appeal the counsel for the insurance company announced that the insurance company did not seek to escape liability upon this ground, although the policy provides that it shall be void "if the subject of insurance be a building on ground not owned by the insured in fee simple." Hence the matter may be dismissed without further consideration and the case treated as if the policy had been issued to Mrs. Walker.

The policy contained a provision that the insurance company would not be liable for loss or damages occurring

while the insured had other insurance on the property, whether valid or not, in the absence of a written agreement of the company permitting such additional insurance. It is conceded that in January, 1923, just before the fire in March of that year, Mrs. Walker procured additional insurance under a policy issued to her by Atlas Insurance Company, for $2,000 upon the property; that there was no written agreement of the company permitting this; that the Atlas policy was in force at the time of the fire; and that Mrs. Walker collected the full amount of the policy.

There was a further provision in the policy, that, in case of any other insurance upon the property (evidently referring to other *permitted* insurance), the company should not be liable under the policy for a greater proportion of the loss or damage sustained than the amount of the policy bore to the total insurance, whether valid or not and whether collectable or not.

The agreed valuation of the property under the "valued policy" Statute of this State, at the time of issuing the policy was $2,800. At the time the policy was issued, Mrs. M. S. Habenicht held a mortgage upon the property, executed by Mrs. Walker to secure a loan of $2,000. The policy contained the usual standard mortgage clause providing that, in the event of loss or damage, the insurance should be payable to Mrs. Habenicht, mortgagee, as her interest might appear. An important provision in this connection was that, as between the mortgagee and the company, the insurance, *as to the interest of the mortgagee only,* should not be invalidated by any act or neglect of the mortgagor, nor by certain other matters therein enumerated. The mortgage clause also provided that, in the event that the company should pay the mortgagee any sum for loss or damage, and should claim that, *as to the mortgagor or owner,* no liability therefor existed, the company should be subrogated

to all the rights of the mortgagee under securities held as collateral to the mortgage debt.

After the fire claim was made by T. J. Walker through his attorneys, acting also for Mrs. Habenicht, for the insurance, a nonwaiver agreement was executed, and upon investigation the insurance company learned the trouble about the title, and the fact of other insurance, and declined the claim. Thereafter suit was commenced upon the policy in the name of Mrs. Habenicht, the mortgagee, but subsequently, in consequence of her objection to the suit being prosecuted in her name, T. J. Walker was substituted as plaintiff. That suit resulted in a nonsuit, I assume, upon the ground that the policy was issued to Mr. Walker whilst the title to the property was in Mrs. Walker.

Thereafter on or about February 11, 1924, Mrs. Walker borrowed through Mr. Belser, attorney, $4,000 from a client of his and secured the note therefor by a mortgage upon the lot upon which the dwelling house insured had stood. Two thousand dollars was borrowed to pay off the Habenicht mortgage and $2,000 was to be used in replacing the burnt house. Mr. Belser gave his personal check to Mrs. Habenicht for the amount of the mortgage and the same was marked "fully satisfied" on February 11, 1924, and so entered upon the record. Four days thereafter, on February 15, 1924, Mrs. Habenicht executed a paper purporting to assign to T. J. Walker all of her right, title, and interest in the policy in question. Thereafter on May 13, 1924, Mrs. Walker instituted the present action, making parties defendant, along with the insurance company, Mrs. Habenicht, and her husband, T. J. Walker.

The foundation of the plaintiff's action is that, by the payment of the Habenicht mortgage, she has been subrogated to all of the rights of Mrs. Habenicht in the mortgage and in the policy of insurance which was made payable to her, free from any defenses which the insurance company may

have had in an action by the plaintiff upon her original rights under the policy.

The defense of the insurance company is predicated upon the theory that there was no subrogation of Mrs. Walker as claimed above, and that the action of the plaintiff upon the policy, after the mortgage had been paid and marked satisfied, extinguished, became subject to the same defenses that would have been available, had there been no mortgage clause in the policy at all.

The insurance company therefore set up the following defenses, as if there had been no mortgage clause and the plaintiff had sued upon the policy in that shape: (1) As a ground of total immunity from liability under the policy, that in January, 1923, while the policy was in force, the insured took out additional insurance of $2,000, in the Atlas Insurance Company, covering the same property, without having obtained from the company a written agreement permitting such additional insurance, as provided for in the policy; (2) as a ground of partial immunity, that, if the policy should not be held avoided for the reason stated above, *in toto*, the company, under the terms of the policy and the Statute Law of the State, can be held liable for only a proportionate amount of the insurance carried in the policy. Other defenses are set up in the answer which, in the view that I take of the matter, need not be considered.

There appears to be little, if any, controversy as to the facts hereinbefore stated. At the conclusion of the evidence the defendant company moved for a directed verdict in its favor, upon the ground that the plaintiff was not entitled to be subrogated to the rights of the mortgagee in the policy, and that it appeared undisputed that additional insurance had been taken out by the plaintiff. The motion was refused. It does not appear in the record for appeal that the plaintiff made a similar motion. The bare statement is made:

"The Judge directed a verdict in favor of the plaintiff in the full amount of the policy upon which the suit was brought."

His reasons therefor are not stated. The direction of a verdict for the plaintiff, however, can be sustained only upon the theory, contended for by her counsel, that by the payment of the Habenicht mortgage, the plaintiff became subrogated to all the rights of Mrs. Habenicht in the mortgage and in the policy, free from any defense which the insurance company may have had in an action by the plaintiff in her own rights. It is manifest that, if this view be incorrect and the plaintiff cannot shield herself under the wing of the Habenicht mortgage, the defense of the insurance company must either have been sustained upon the motion for a directed verdict or submitted to the jury. From the judgment entered upon the directed verdict in favor of the plaintiff, the defendant insurance company has appealed upon exceptions hereinafter considered.

I think that it sufficiently appears from the foregoing statements that the principal question in this appeal is that of subrogation. Can the plaintiff stand in the shoes of the mortgagee, or must she stand in her own?

As between the insurance company and the mortgagee, under the mortgage clause, the mortgagee occupies a much more favorable position than the mortgagor or owner. According to the express terms of that clause, "the insurance, *as to the interest of the mortgage only therein,* shall not be invalidated by any act or neglect of the mortgagor or owner of" the property, nor by certain other matters mentioned therein, which *as between the company and the insured,* are specifically declared in the policy sufficient to invalidate it. For instance, as between the company and the insured, among other things, the policy provides:

"This entire policy shall be void unless otherwise provided in writing added hereto: (a) If the interest of the insured

be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; or (c) if with knowledge of the insured foreclosure proceedings be commenced or notice given of the sale of any property insured hereunder by reason of any mortgage or trust deed; or (d) if any change, other than by the death of an insured, take place in the interest title or possession of the subject of insurance (except change of occupants without increase of hazard)."

And in another clause the same result will follow "while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part."

As between the mortgagee and the insurance company, no act or neglect of the mortgagor or owner shall invalidate the policy; no foreclosure of the mortgage or notice of sale, nor change in title or ownership, nor occupation for more hazardous purposes than are permitted by the policy, shall have that effect—placing the mortgagee, as I have stated, in a much more favorable position than the mortgagor or owner.

This distinction between the relative positions of the mortgagee and the mortgagor or owner is further emphasized by the stipulation in the mortgage clause that if the company should, under its drastic liability to the mortgagee, pay him any loss or damage under the policy, *and shall claim that, as to the mortgagor or owner, no liability exists,* then the company, to the extent of such payment, shall be subrogated to the rights of the mortgagee in all securities held as collateral to the mortgage debt, showing clearly that a marked distinction is recognized between the liability of the company to the mortgagee and to the insured, contemplating an instance of liability to the mortgagee under circumstances of nonliability to the insured, in which event, upon payment of the loss to the mortgagee, the company shall be entitled

9—S. C.—136.

to recover through the securities to which it may be subrogated money which, as against the insured, it should not have been compelled in good conscience to pay.

The plaintiff contends that she is subrogated to the rights of the mortgagee in the policy of insurance. The right which the mortgagee acquired of having the loss or damage, to the extent of the policy, made payable to her, was an obligation of the insurance company, incidental to its principal obligation under the policy, to the insured, as collateral security to the bond and mortgage held by the mortgagee. The plaintiff's right of subrogation to this collateral must therefore be worked out through her relation to the principal obligation, the bond and mortgage, and her action in reference to it. Her relation to the bond and mortgage was that of obligor and mortgagor, a relation of *primary* obligation; her action in reference to the bond and mortgage was payment, satisfaction, extinguishment.

I do not think that the fact of payment and satisfaction of the bond and mortgage by Mrs. Walker is a factor of controlling significance in determining the existence of the right of subrogation. If the other elements of the equity can be established, this circumstance is not entitled to a great deal of weight. See authority cited by the writer in the case of *Prudential Co. v. Connor,* 120 S. C., 42; 112 S. E., 539. It is so obviously to the interest of the party paying off an incumbrance that it be left open for his protection that he will not be held to an extinguishment of it.

But the difficulty in the application of the equity, to my mind, is the fatal vice that Mrs. Walker was the *primary* and not the *secondary* obligor in the obligation to which she claims subrogation. Counsel for the plaintiff cite with manifest approval, the opinon of the writer in the *Prudential case, supra,* while the writer adheres to the views there expressed, which in his judgment are overwhelmingly sustained by the authorities, it is proper to state that the

opinion was that of a single justice upon petition for a re-hearing which dismissed. It cannot therefore be regarded as authority further than the Court may subsequently approve it. It is said in the opinion in that case, quoted by counsel for the plaintiff in their printed argument:

"It follows that the party claiming the right of subrogation must establish: (1) That he had paid the debt; (2) that he was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) *that he was secondarily liable for the debt or for the discharge of the lien;* (4) that no injustice will be done to the other party by the allowance of the equity."

See authorities begining at page 56 (112 S. E., 544).

I think that the facts in this case fall short of establishing two of these essential elements: (3) That Mrs. Walker was secondarily liable upon the obligation, bond and mortgage, to the right of the mortgagee in which she claims subrogation; (4) that no injustice will be done to the right of the insurance company by permitting the subrogation.

As to the third element:

"Subrogation is the equity by which a person who is *secondarily* liable for a debt, and has paid the same, is put in the place of the creditor, so as to entitle him to make use of all of the securities and remedies possessed by the creditor in order to enforce the right of exoneration as against the principal debtor in the same rank with himself. To entitle a party to subrogation, his equity must be strong and his case clear. It is an equity called into existence for the purpose of enabling a party *secondarily* liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the *principal* debtor, and by the use of which the party paying may be made whole. * * * *There can be no right of subrogation in one whose duty it is to pay,* or in one claiming under him, against one who is secondarily liable or one not liable at all. In such a case

payment is extinguishment." 2 Story, Eq. Jur. (4th Ed.), § 707.

In Section 717, it is said:

"It may be stated as a general rule that, where a surety, or a party *secondarily* liable, discharges an obligation *for which another is primarily* liable, the party who pays is entitled to be subrogated to all of the rights that the creditor had against the primary debtor."

There does not appear to be any controversy over the proposition that Mrs. Walker is not entitled to subrogation to the rights of the mortgagee in the mortgage, and incidentally in the policy of insurance, unless in the payment of the mortgage she discharged a debt for which she was secondarily liable.

In 1 Jones, Mortgage (6th Ed.), 876, it is said:

"The test of the right of subrogation is found an answer to the inquiry whether the person who paid the mortgage debt is the one whose duty it was to pay it first of all; if the debt was not primarily his, and he occupied the position of a surety to the mortgagor, he is entitled to be subrogated to the position of the mortgagee when he has paid the debt; but, if the debt is the debt of the person who paid it or is a debt which he has covenanted to pay, his payment of it raises no right of subrogation, but is simply a performance of his own obligation or covenant."

In *Breedin v. Smith,* 126 S. C., 346; 120 S. E., 64, the Court said:

"Subrogation is not allowed in favor of one who pays a debt in performance of his own covenant"—citing 37 Cyc., 374. *McLure v. Melton,* 34 S. C., 377; 1 3S. E., 615; 13 L. R. A., 723; 27 Am. St. Rep., 820.

In 37 Cyc., 374, cited in *Breedin v. Smith, supra,* it is said:

"Subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, *pays the debt of another,* and not in favor of him who pays a debt in perform-

ance of his own covenant, for the right of subrogation never follows an actual primary liability, and *there can be no right to subrogation in one whose duty it is to pay.*"

See, also, to the same effect, *Rogers v. Meyers,* 68 Ill., 92. *Paton v. Robinson,* 81 Conn., 547; 71 A., 730. *Loewenstein v. Insurance Co.,* 227 Mo., 100; 127 S. W., 72. *Trust Co. v. Gomeringer,* 236 Pa., 179; 84 A., 757. *Dill v. Voss,* 94 Ind., 590. *Brown v. Bank,* 139 Iowa, 83; 117 N. W., 289; 3 Pom. Eq. Jur., § 1419.

Judging from the strenuous effort to place Mrs. Walker in the position of having discharged an obligation for which she was only *secondarily* liable, I assume that the leading opinion concedes the correctness of the above proposition; that she is obliged to show this before she can claim subrogation. Two grounds are stated in the opinion of Mr. Justice Watts to sustain the conclusion that, in paying off the mortgage, Mrs. Walker discharged an obligation for which she was only secondarily liable:

(1) That she was compelled, on account of the refusal of Mrs. Habenicht to sue for the insurance money, to pay off the mortgage in order to secure protection from the insurance company.

He says:

"She did not pay off the mortgage as a *primary* obligation, but as a *secondary* obligation, to get possession of the policy in order that she might collect from the insurance company that protection against fire that she had paid the premium for 12 years. By doing as she did, she became subrogated to all rights in the policy of Mrs. Habenicht."

(2) That, by reason of the mortgage clause, the insurance company became primary liable *to pay the mortgage debt,* which rendered Mrs. Walker secondarily liable for it.

He says:

"She was *secondarily* liable for the debt and discharge of the lien. The insurance company was *primarily* liable *to*

*pay off the mortgage debt,* for it was a contractual liability on their part *to pay the mortgage to Mrs. Habenicht."*

I do not think that the conclusion can be sustained upon either ground, or for that matter upon any other.

*As to the first ground:* It would appear manifest that, if the mortgage was a primary obligation of Mrs. Walker, as unquestionably it was, her *purpose* in paying it off could not change its character as such. Mrs. Habenicht, it appears, refused to allow her name to stand as plaintiff in the action first brought against the insurance company, and it may be conceded, refused to co-operate with Mrs. Walker in collecting the insurance money and applying it to the mortgage debt. The above quotation from the opinion of Mr. Justice Watts implies, if it does not assert, that Mrs. Walker was obliged to pay off the mortgage in order to reap any advantage of the insurance; that this was the only course open to her in order to protect herself. I do not think that this implication or assertion can be sustained. The insurance policy was issued to her; it covered property belonging to her; the loss or damage for which compensation was to be made was that of Mrs. Walker; it was issued as much for her benefit as for that of the mortgagee; she was directly and personally interested in the collection and application of the insurance money to the mortgage.

Upon the refusal of Mrs. Habenicht to proceed by law to collect the insurance money and to apply it to the mortgage, Mrs. Walker unquestionably had the right to bring an action against Mrs. Habenicht and the insurance company to compel such collection and application. It was a matter of no consequence in whose hands the actual policy may have been at the time. *Union v. Insurance Co.,* 196 Mass., 230; 81 N. E., 994; 14 L. R. A. (N. S.) 459; 13 Ann. Cas., 433. As a matter of law, Mrs. Walker was authorized, independently of any recalcitrant

conduct of Mrs. Habenicht, to bring the action in her own name against the insurance company alone. Section 356 of the Code of Civil Procedure provides:

"* * * A trustee of an express trust * * * may sue, without joining with him the person for whose benefit the action is prosecuted. *A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another."*

In *Cousar v. Heath,* 80 S. C., 466; 61 S. E., 973, it is held that one making a contract in his own name, for the benefit of himself and another, may sue thereon in his individual capacity.

I cannot conceive how the volitional act of Mrs. Walker in paying off a debt of her own, a course to which she was not confined in order to protect her interest, can transmute a primary into a secondary obligation; nor can I conceive how the recalcitrant conduct of Mrs. Habenicht, to which the insurance company was not a party, can deprive the latter of its contract rights.

And after the discharge of the mortgage by Mrs. Walker, it was not at all necessary to resort to any right of subrogation in order to secure the benefit of the insurance which had matured, for as soon as the mortgage was discharged, the interest of Mrs. Walker in the policy, which had theretofore been subject to the claim of the mortgagee to the proceeds, being relieved of that incumbrance, was as enforceable in her own right as if there never had been a mortgage clause. Of course, under these circumstances, the interest of Mrs. Walker would be subject to the conditions in the policy contract which affected her, and from which the mortgagee was relieved by the mortgage clause.

*As to the second ground,* that the insurance company *assumed the payment of the mortgage debt:* The engagement of the insurance company, under the

mortgage clause, was that whatever *loss or damage* from fire *that Mrs. Walker might sustain,* up to the amount of the policy, should and would be paid to Mrs. Habenicht, as her mortgage interest at that time might appear. There is not a suggestion that the insurance company made any other engagement; certainly none that it *assumed the payment of the mortgage debt.*

I freely concede that if, as a matter of fact, the insurance company, under a contract with Mrs. Walker, based upon a valid consideration, assumed the payment of the mortgage debt, with the knowledge and consent of the mortgagee, who expressly or impliedly accepted the insurance company as the primary obligor, Mrs. Walker's relation to the mortgagee would have been converted from a primary into a secondary obligation. But both of these elements must have been made to appear in order to accomplish the result.

I have endeavored to show that there is not the slightest ground to sustain this contention that, in any sense of the word, the insurance company assumed the payment of the mortgage. But even if the mortgage clause may be held to have had that effect, there is nothing to show that, expressly or by implication, Mrs. Habenicht ever recognized or accepted the insurance company as the primary obligor for the debt.

There is quite a difference between the two cases of (1) where the mortgagor *conveys* the mortgaged premises subject to an existing mortgage or upon the assumption by the grantee of such mortgage, and (2) where the mortgagor *retains* title to the premises and enters into a contract with a third party by which the latter assumes the payment of the mortgage.

In the instance first cited, the premises become the primary fund out of which the mortgage is collectible, whether the grantee has assumed the mortgage

or not, and regardless of the acquiescence of the mortgagee in this arrangement. The mortgagor then becomes secondarily liable for the mortgage debt. See authorities cited by the writer in the case of *Prudential Co. v. Connor*, 120 S. C., 42; 112 S. E., 539.

In the second instance, which is that claimed in the case at bar, the mortgagor does not assume the position of a secondary obligor, unless the contract by which the third party assumes the mortgage was entered into with the knowledge and consent of the mortgagee and an acceptance by him of the third party as the primary obligor.

This view is illustrated and sustained by the very recent case of *Breedin v. Smith*, 126 S. C., 346; 120 S. E., 64. In that case Breedin was, under a real estate contract, obligated to pay Clinkscales $2,500 at a certain time, Breedin assigned the contract to Smith and Dagnall, who assumed the payment to Clinkscales; the assignees failed to pay Clinkscales and Breedin, having done so, claimed to be subrogated to the rights of Clinkscales as against Smith and Dagnall. The Court denied the right of subrogation upon the ground that Clinkscales had not assented thereto or in any wise accepted the defendants Smith and Dagnall as the primary obligors.

It is there said with striking perspicuity:

"Clinkscales was not a party to the agreement between plaintiff and defendants. It does not appear that he ever assented thereto, or in any wise expressly or impliedly accepted the defendants as primary obligors. Conceding that Clinkscales, by virtue of defendants' express promise in the assignment contract, might have had a right of action against defendants, * * * the actual primary liability to him was that of the plaintiff, Breedin. Subrogation is not allowed in favor of one who pays a debt in performance of his own covenants [citing authorities]. When, there-

fore, Breedin paid the $2,500 to Clinkscales in discharge
of a debt for which he was as to Clinkscales primarily liable,
the payment was an extinguishment of Clinkscales' right
to recover as against any one, and there remained no rights
of Clinkscales against the defendants to which the plaintiff
could become subrogated."

The mortgage clause contains a reservation of the right
to cancel the policy after 10 days' notice to the mortgagee,
and upon like notice *to cancel the mortgage clause* which is
claimed to have constituted the insurance company the *pri-
mary obligor* of the mortgage debt. The mortgage would
occupy a precarious position, indeed, with the insurance
company under such circumstances as the principal obligor.
There is not the slightest circumstance tending to show that
the mortgagee considered the insurance company the primary
obligor, or that she took any steps to enforce such supposed
obligation; in fact the complaint of Mrs. Walker is that the
mortgagee would not act.

The contention that the insurance company assumed the
payment of the mortgage debt cannot be sustained for
another reason, in my opinion: The standard clause created
no *contractual* relation between the insurance company and
the mortgagee, although the mortgagee, by the contract
between the insurance company and the mortgagor, may
have obtained a substantial interest or benefit in the contract.

The Courts of the several states are in hopeless conflict
as to the effect of the standard clause upon the relation
between the insurance company and the mortgagee. Some
hold that it constitutes a separate and independent contract
between them; others, that it does not constitute such a
contract, but only confers upon the mortgagee a benefit,
separate from and independent of the interest of the mort-
gagor, and enforceable in his own name by an independent
action. Some, that it is equivalent to an assignment of the
policy at its inception; others that it is not. Some, that it

amounts in law to an insurance of the mortgagee's interest; others, that it is only the interest of the mortgagor that is insured, the mortgagee working out his interest through that of the mortgagor. In not a single case have I encountered the suggestion that it amounts to an assumption of the mortgage debt.

In the opinion of Mr. Justice Watts the position is taken, which I must admit has the support of quite a number of cases, that the clause constitutes a new and independent contract between the insurance company and the mortgagee, by which the interest of the mortgagee is insured. The opinion declares:

"The contract of the insurance company with Mrs. Habenicht, as holder of the mortgage, is a wholly independent contract from that with the original owner or mortgagor. Mrs. Habenicht had an independent contract with the insurance company whereby the insurance company insured her individual interest in the property."

In the absence of a decision of this Court sustaining that view, I do not feel compelled or even inclined to accept it, being convinced that the opposing authorities are supported by the better reasoning.

There is not the faintest suggestion in the case that there was a contract between Mrs. Habenicht and the insurance company. She had a contract with Mrs. Walker, in the note or bond and mortgage, which (in the absence of a copy of the mortgage in the record), I assume contained a covenant on the part of Mrs. Walker to insure the building and make the loss payable to the mortgagee. Mrs. Walker carried out her agreement with Mrs. Habenicht and *she* made a contract with the insurance company accordingly. Mrs. Walker had a double incentive in making this contract. In the first place she could not have negotiated the loan otherwise, and in the second it was a substantial protection to her as concerned both her dwelling and the mortgage

debt upon it, and, furthermore, in the event of her discharging the mortgage debt before a fire, it would continue to protect her. The contract of insurance was therefore for the mutual benefit of both mortgagor and mortgagee, and in no sense a contract between the mortgagee and the insurance company; the mortgagee being simply a third party who, by the contract between the mortgagor and the insurance company, acquired a beneficial interest in the policy, really as additional security to the bond or note secured by the mortgage.

It may be safely assumed that the transaction opened with negotiations between Mrs. Walker and Mrs. Habenicht, looking to a loan secured by mortgage, and that Mrs. Habenicht insisted upon an insurance policy to be issued to Mrs. Walker with the standard mortgage clause in it. Mrs. Walker agreed to the terms, and, turning away from Mrs. Habenicht, entered into the policy contract with the insurance company as she had agreed with Mrs. Habenicht to do. How a contract between the insurance company and Mrs. Walker can be construed to be a contract between the insurance company and Mrs. Habenicht, simply because it contains a clause in favor of Mrs. Habenicht, I cannot conceive. The condition upon which Mrs. Habenicht was willing to enter into a contract with Mrs. Walker was that Mrs. Walker would enter into a contract with the insurance company for Mrs. Habenicht's benefit.

Undoubtedly the mortgage clause conferred a substantial benefit or interest upon the mortgagee, but that may and often does happen by reason of the provisions of a contract between two other persons, and entitled the beneficiary of that provision to enforce his rights, not upon the ground that he has made a contract with such other person, for plainly he has not, but upon the familiar principle that, where a contract is made between two persons, which secures a benefit to a third person, who may have paid nothing for

it, *and may have been entirely ignorant of it,* such third
person may enforce the benefit which the contract contained
in his favor.

In *Butler v. Telegraph Co.,* 62 S. C., 222; 40 S. E., 162;
89 Am. St. Rep., 893, the Court said:

"So that it thus appears that a contractual relation between
the plaintiff and defendant is not essential. The liability
for a breach of the duty owed by the defendant to the plain-
tiff may arise in instances where the contract is made for
the *benefit of the plaintiff*" (italics by the Court)—citing
many cases sustaining the proposition, as to which I appre-
hend there could be no dissent.

See, also, *Mims v. Railroad Co.,* 69 S. C., 338; 48 S. E.,
269. *McDowell v. Laev,* 35 Wis., 175; 6 R. C. L., 882; 13
C. J., 704. *Western Union Tel. Co. v. Schriver,* 141 F.,
538; 72 C. C. A., 596; 4 L. R. A. (N. S.,) 684.

In *Mack v. Bonding Co.,* 103 S. C., 55; 87 S. E., 439,
it was held that a materialman, who had furnished brick
to a city for paving had such a benefit under the contractor's
bond as enabled it to sue as a beneficiary under the bond.
See, also, *Ancrum v. Water Co.,* 82 S. C., 284; 64 S. E.,
151; 21 L. R. A. (N. S.) 1029. *Brown v. O'Brien,* 1 Rich.,
270; 44 Am. Dec., 254. *Duncan v. Moon,* Dud., 332.

The conception that the standard clause constitutes a new
and independent contract, a breaking away from the plain
and simple interpretation of the policy as being a contract
between the insured and the insurance company containing
a special provision for the benefit of the mortgagee, upon
which he is entitled to sue, is entirely due to a magnified
estimate of the difference between an open mortgage clause
and a standard clause, and an overfusion of thought between
*an independent contract* and *an independent cause of action.*
The difference between the two clauses affects only the
character and extent of the benefit conferred, and does not
in anywise convert what was before simply a benefit into a

new and independent contract, where in neither case is there
the semblance of a contract between the insurance company
and the mortgagee. The fact that practically a limitless
benefit is conferred by the standard clause upon the mort-
gagee makes it none the less a benefit, and, however limitless
a benefit may be, it can never reach the dignity of a contract,
where there is no contract.

The open mortgage clause is a simple provision that the
loss shall be payable to the mortgagee as his interest may
appear. The standard form, in addition to this provision,
further stipulates that, as to the interest of the mortgagee
in the insurance, the insurance shall not be invalidated by
certain specified acts of the insured, which continue as
grounds of forfeiture against him.

It is universally held that the *open mortgage clause*
does not create a new and independent contract
between the insurance company and the mortgagee;
that the original contract between the company and the
insured remains; that the mortgagee has no insurable in-
terst in the property insured; that he does not recover in
the event of loss, as the party insured, but as the beneficiary
under the policy, of the amount recoverable, in the right of
the insured.

In *Williamson v. Insurance Co.,* 86 Wis., 393; 57 N. W.,
46; 39 Am. St. Rep., 906, the Court says:

"The legal right of action was in the insured, and the
provision in the policy, 'Loss, if any, first payable to Jennie
Perkins or assigns as her mortgage interest may appear,'
operated only as a conditional appointment * * * to pay
so much of the proceeds of the policy as might be equal to
the amount due on the mortgage at the time of, and in the
event of, a loss under it. It was not operative *in præsenti,*
and the insured was still the owner of the policy. If the
mortgage was paid before any loss occurred it could not
become effective. These considerations serve to show that,

whether the mortgage debt be greater or less than the amount of the policy when written, such a provision in favor of a mortgagee does not operate as an assignment of the policy. It is still the owner of the premises who is insured, and *the contract of the company is with him alone,* and the continued validity of the policy is dependent upon the performance by him of the conditions embraced in it. It is not the interest of the mortgagee in the premises that is insured; and it seems clear, therefore, that an action for the recovery of the money in case of loss must be brought in the name of the insured, but that the mortgagee, in respect to his interest, may be joined with him as a coplaintiff." (Of course, the latter statement cannot be sustained under our Code which enables the real party in interest to sue.)

"An assignment, however, with the assurer's consent, to a mortgage, loss payable as interest may appear, does not create a new contract but he is held obligated by the conditions in the original policy as in case of other insurance." 4 Joyce, Ins. (2d Ed.), p. 3940.

"A mortgage clause, making the loss under the policy payable to a mortgagee as his interest may appear, does not amount to an assignment of the insurance nor of the insurance policy; nor is a new contract created, but the mortgagee is held obligated by the original policy conditions where assignment is made to him loss payable as interest may appear, and so far as not limited by express language in a mortgage clause attached to a policy at the time of its execution, the plain provision of the policy, as between the insured mortgagor and the insurance company, must prevail and be observed." 4 Joyce, Ins. (2d Ed.), p. 3949.

In *Bates v. Insurance Co.,* 10 Wall, 33; 19 L. Ed., 882, the Court said:

"Now, it is a well-known and frequent thing in insurance business for a person to insure his life, or his property, and either in the policy itself, or by indorsement at the time it

is made, or by subsequent indorsement, to which the consent of the company is generally required, to direct the loss to be paid to some third party. And this is done in language similar, if not identical with that used in this case. It is a mode of appointing that the loss of the party insured shall be paid by the company to such third person. This transaction is a very common mode of furnishing a species of· security by a debtor to his creditor, who may be willing to trust to the debtor's honesty, his skill and success in trade, but who requires indemnity against such accidents as loss by fire, or the perils of navigation. The property of the debtor at risk, being thus insured for the benefit of the creditor, gives him this indemnity."

In Flanders on Fire Insurance, 441, it is said:

"Where the policy provides that the loss, if any, is payable to another, to a mortgagee for example, instead of the assured, it is merely a designation of the person to whom it is to be paid, and is not an assignment of the policy. Hence it is the damage sustained by the party insured and not by the party appointed to receive payment that is recoverable from the insurers. * * * In other words, a policy made payable to A. in case of loss is an agreement on the part of the insurers that A. shall recover whatever the person originally insured may be entitled to receive in case of loss; that is, it is a continuing order or assignment of what may become due under the contract, and not an absolute transfer by virtue of which the assignee acquires the full rights of an assignee of a chose in action."

In *Continental Ins. Co. v. Hulman,* 92 Ill., 145; 34 Am. Rep., 122, it is said:'

"Making the 'loss, if any, payable to Hulman & Cox, mortgagees,' was not an insurance of their mortgage interest in the property."·

In *Franklin v. Insurance Co.,* 119 Mass., 240, the Court says:

"It has been repeatedly held by this Court that such an indorsement does not operate as an assignment of the policy, *nor as a contract to insure the interest of the mortgagees,* but that they can claim only what the party originally insured is entitled to recover under his contract."

In *Rawl v. Insurance Co.,* 94 S. C., 299; 77 S. E., 1013; 45 L. R. A. (N. S.), 463, Ann. Cas., 1915-A, 1231, the mortgage clause was what is known as the "open clause"; that is, the policy provided:

"Loss, if any, payable to (the mortgagee) as his interest may appear, subject, nevertheless, to all the conditions of this policy."

It did not contain the distinguishing feature of the "standard" mortgage clause, that the interest of the mortgagee should not be invalidated by any act or neglect of the owner. The issue was whether the mortgagee was entitled to the 5 days' notice of cancellation provided for in the policy. The Court held that he was, and in the course of the opinion (by Justice Woods, unanimously concurred in) said:

"There can be no doubt that under a policy like this a mortgagee, or other person, named as the payee, as his interest may appear, holds his protection under the policy, subject to having it defeated by any act or omission of the assured which under the policy produces a forfeiture. *Under such a policy it is the owner's, not the mortgagee's, interest that is insured,* and the mortgagee must stand or fall on the performance or breach by the owner of his contract."

This, as I have endeavored to show, is the universal rule, as applied to policies containing what is understood as the *open mortgage clause.* The reasons given in the above quotations are so clearly applicable to policies containing the *standard clause* that I cannot conceive how simply such a change in the character or extent of the benefit conferred upon the mortgagee can convert into an independent contract

that which otherwise was no contract at all, or make inapplicable the rule declared in the *Rawl case, supra:*

"*It is the owner's and not the mortgagee's interest that is insured.*"

That is all that is accomplished by the standard clause, as compared with the open clause, an enlargment of the benefit provided for *in the contract between the mortgagor insured and the insurance company* in favor of the mortgagee. It might as well be contended that the standard clause, which perchance, instead of enlarging the benefit to the mortgagee, *contracted it,* would constitute a new and independent contract between the insurance company and the mortgagee. In the one case, as in the other, the contract is with the mortgagor to insure *him,* to indemnify *him* from loss of or damage to *his* property; and the fact that the obligation is to pay the loss to the mortgagee, upon enlarged or restricted terms, cannot possibly create a contract which did not otherwise exist.

In *Ætna Ins. Co. v. Cowan,* 111 Miss., 453; 71 So., 746, it appears that there was a Statute of Mississippi practically converting all mortgage clauses into standard clauses, with the same immunity to the mortgagee as the latter provide. The question, therefore, was precisely that raised in the case at bar, whether the mortgage clause created a new and independent contract between the mortgagee and the company. The Court held that it did not, saying:

"By an independent contract, however, our Court meant nothing more than, if the policy of insurance is void as between the insurance company and the assured on account of some act or omission on the part of the assured, nevertheless, it will be valid and binding between the insurance company and the mortgagee."

In *Erie Co. v. Insurance Co.,* 81 Ohio St., 1; 89 N. E., 1065; 25 L. R. A. (N. S.), 740; 135 Am. St. Rep., 735; 18 Ann. Cas., 265, the policy involved contained the standard

mortgage clause with the immunities in favor of the mort-
gagee. The issue was whether the mortgagee was bound
by the appraisal provided for in the policy, of which he had
no notice. The Court held that he was, saying:

"It would appear reasonable that, *in respects not modified
or limited by the express language of this mortgage clause,*
the plain provisions of the policy as between the insured
mortgagor and the insurance company must prevail and
be observed. The rights conferred by the clause spring from
the contract relation which the mortgagor sustains to the
company, and, but for saving words in the clause, the neglect
or default of the insured might defeat the interests of both.
* * * The principal contract must be observed, except as
expressly modified, and that the rights of the mortgagee
depend upon, and must be worked out through, the relation
the insured sustains to the insurance company; that relation
being one solemn primary contract."

In *Insurance Co. v. Porter,* 44 Fla., 568; 33 So., 473,
the Court says (quoting syllabus) :

"Where a fire insurance policy contains a clause, agreeing
to pay the amount thereof to the mortgagee as his interest
may appear, and that such interest may not be invalidated
by any act of the mortgagor, such clause does not create an
independent contract in favor of the mortgagee, but gives
to such mortgagee a separate contractual status toward the
insurer, so that he can recover the amount under conditions
that would defeat a recovery by the mortgagor."

In *Warbasse v. Insurance Co.,* 42 N. J. Law, 203, it is
said that the rule of law is well settled that a direction in
a policy of insurance that the money, if it become due, was
to be paid to a mortgagee of the insured's premises, did not
alter the agreement of insurance in any respect except in the
one particular of appointing a certain person to receive such
payment.

In *Jaskulski v. Insurance Co.,* 131 Mich., 603 ; 92 N. W.,

98, the policy involved was one containing the standard mortgage clause, with immunities to the mortgagee. Referring to the case of *Phenix Ins. Co. v. Omaha Co,,* 41 Neb., 834; 60 N. W., 133; 25 L. R. A., 679 (cited in the leading opinion of Mr. Justice Watts in the case at bar), which also involved the same clause, the Court said:

"The mortgagor had forfeited his rights in the policy. It was held that the mortgagee had not, but that this clause gave him *an independent right of action against the company.*"

In *Collinsville v. Ins. Co.,* 77 Conn., 676., 60 A., 647 ; 69 L. R. A., 924 it is held that the standard mortgage clause "must" establish for a mortgagee under such conditions a status with respect to the insurance which is not only independent of, but also superior to, that of the property owner. The former's rights are thus expressly set free from the operation of those acts and neglects of the latter which would destroy the latter's insurance or limit the extent of his recovery. The rights of the mortgagee become not merely those of a substitute for the owner; he acquires rights of his own which are subject to no man's control, and which give him independent and distinct protection, not an independent and distinct *contract.*

Another view of the matter is this: Assuming that Mrs. Walker was the beneficiary in the policy, in the first instance, the effect of the mortgage clause was simply to prefer the mortgagee to her in the payment of the loss, and the effect of paying off the mortgage was to extinguish this right of preference in favor of the mortgagee, leaving the policy payable in the event of loss to the insured as if there had never been a mortgage clause in it, so that the plaintiff's rights in the policy arise not from being subrogated, but from her discharging the debt for which the mortgage clause constituted the policy a collateral, and a restoration of her rights as the insured, in which event

it seems clear that her action upon the policy would be subject to the defenses which would be available to the insurance company, as if there had been no mortgage clause in the policy.

Another fatal objection to the right of Mrs. Walker to be subrogated to the rights of Mrs. Habenicht, as against the insurance company, is that subrogation, which will work an injustice to the party against whom it is claimed, or deprive him of a substantial legal or equitable right, will not be decreed. It is a creature of equity.

The mortgage clause contains this provision:

"Whenever this company shall pay the mortgagee any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt."

If the insurance company had paid the loss to the mortgagee, at the same time claiming that the insured had forfeited his right to recover, it would have had a contract right to an assignment of the securities held by the mortgagee, the note, mortgage, and the policy; and, if it succeeded in establishing the forfeiture, it would have the right to foreclose the mortgage and enter up judgment against the mortgagor for the deficiency to the extent of the payment of loss to the mortgagee.

If the contention of the plaintiff in this case be sustained, this contract right of the insurance company would be defeated by the voluntary payment of the mortgage by the insured; or, if the mortgagee had foreclosed her mortgage and entered a judgment for the deficiency against the mortgagor, the mortgagee would have had recourse against the insurance company for such deficiency to the extent of the insurance, in which event the insurance company, claiming that no

liability under the policy existed in favor of the insured, would have 'had the right to an assignment of the deficiency judgment, which the mortgagor would have to pay upon establishment of the forfeiture.

It does not appear just to me that both of these contract rights of the insurance company may be destroyed by the payment of the mortgage by the insured. If the insured has the right to pay off the mortgage and sue the insurance company in the subrogated right of the mortgagee, it will result in a foot race between the mortgagor and the insurance company to reach the mortgagee. Subrogation will not only rob the insurance company of the defenses legitimately available to it under the policy contract as against the mortgagor, and not as against the mortgagee, but will deprive it of the right in the mortgage clause, in the event that it has a legitimate defense against the mortgagor, to pay off the mortgage and secure recoupment from the defaulting mortgagor.

Again, it is only fair that, if Mrs. Walker be subrogated to the *rights* of Mrs. Habenicht, she must assume her *obligations*. Under the clause above quoted, under the circumstances stated, the insurance company was entitled to an assignment from Mrs. Habenicht of all securities held by her to the mortgage debt. Mrs. Walker, by paying the debt, made it impossible for this assignment, as the extinguishments of Mrs. Habenicht's interest in the securities, the mortgage, and the policy, followed the extinguishment of the debt. So, if Mrs. Walker is not entitled to be subrogated to the rights of the mortgagee, she must meet in her own relation as the insured the attack made upon her right to recover.

The defenses are both total and partial. The total defense is based upon the provision in the policy:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring: (a) while the insured shall have any other con-

tract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The partial defense is based upon this provision:

"This company shall not be liable for a greater proportion of any loss or damage than the amount hereby insured shall bear to the whole insurance covering the property, whether valid or not, and whether collectible or not."

As to the total defense: It is an admitted fact in the case that in January, 1923, a month or two before the fire and while the present policy was in force, Mrs. Walker applied for and obtained from the Atlas Insurance Company a policy of $2,000 upon this identical evidence. There is no attempt to show there was an agreement in writing by the company permitting such additional insurance, and no effort to prove a waiver by the company of the forfeiture provided for.

It follows that, if the conditions was a valid one, that it was breached by the insured, and that there was no waiver by the company, the direction of a verdict in favor of the defendant company was inevitable.

In *Young v. Insurance Co.,* 68 S. C., 387; 47 S. E., 681, the policy contained a similar provision as to other or additional insurance. The Court said:

"To hold the insured not to be bound by this provision, would be equivalent to holding that when a contract is made for a policy of insurance, and the ordinary policy is issued with the usual conditions printed in it, all these conditions would be void and have no effect on the liability under the policy unless expressly brought to the notice of the insured and assented to by him. To state such a proposition is to reject it. * * * It was admitted by the plaintiff that she took out other insurance, and this was sufficient to defeat her recovery, unless this condition was waived."

To the same effect are *Spann v. Insurance Co.,* 83 S. C., 262; 65 S. E., 232. *Wynn v. Insurance Co.,* 100 S. C., 47;

84 S. E., 306. *Camden Co. v. Insurance Co.,* 106 S. C., 467; 91 S. E., 732.

As to the partial defense: The policy was a valued policy in which the agreed valuation was $2,800.

The defendant's policy was for $2,000, and that of the Atlas Company $2,000, total $4,000. The provision in the policy is practically the same as that in the valued policy law of South Carolina (Section 4095, Code of 1922):

"Two or more policies written upon the same property shall be deemed and held contributive insurance; and if the aggregate sum of all such insurance exceed the insurable value of the property, as agreed by the insurer and the insured, in the event of a total or partial loss, each company shall be liable for its pro rata share of said insurance."

As the total insurance was $4,000 and the agreed valuation was $2,800, each of the companies having issued a policy of $2,000 would be liable under the statute and the condition in the policy for 50 per cent. of the agreed valuation $2,800, $1,400. So that in any event, assuming that the verdict should not have been directed in favor of the defendant, the trial Judge was clearly in error in directing a verdict for the plaintiff in excess of $1,400, with interest. In my view of the case, however, that the verdict should have been directed in favor of the defendant, this consideration is of no special moment.

The judgment of this Court is that the judgment of the County Court be reversed and that the case be remanded to that Court for judgment in favor of the defendant under rule XXVII.

MESSRS ACTING ASSOCIATE JUSTICES J. H. MARION and R. O. PURDY concur.

MR. JUSTICE WATTS (dissenting): This case arose by reason of the alleged destruction by fire of property of the plaintiff, Mrs. Lula A. Walker, on March 12, 1923, completely destroying house insured under Queen Insurance

Company policy No. 2722, issued on July 20, 1921 in favor of T. J. Walker. Suit was then instituted in the name of Lula A. Walker, complaint being filed May 13, 1924, and was duly answered. Motion was thereafter made, upon notice duly served, to transfer the case to Calendar II for a hearing on the equitable issues before the trial of such legal issues as might exist in the case, which motion was refused, by order of the trial Judge, dated June 24, 1924. Notice of appeal from this order was duly served on July, 3, 1924, within the time allowed by law, and on August 1, 1924, defendant served notice upon the plaintiff's attorney, excepting to the order hereinabove mentioned, reserving the right of appeal therefrom upon final judgment. This notice, with notice of appeal before served, was relied upon to save this point in case the defendant should suffer an adverse verdict. The case came on to be heard before his Honor, Judge M. S. Whaley, and a jury, on September 10, 1924. At the close of the defendant's testimony, defendant made a motion for a direction of verdict, upon grounds hereinafter set out in the record, which motion was refused, and the Judge directed a verdict in favor of the plaintiff in the full amount of the policy upon which the suit was brought. From this verdict the defendant duly appealed, upon notice served on September 20, 1924, within the time prescribed by law, and the case now comes on for hearing under such appeal.

"(1) That the Presiding Judge erred in refusing defendant's motion to have this case transferred to Calendar II and the equitable issue tried on the equity side of the Court previous to the trial of the legal issues, in that the same deprived the defendant of a distinct legal right and tended to prejudice the orderly consideration of its defenses, by trying both the legal and equitable issues by the jury at the same time.

"(2) That the Presiding Judge erred in refusing to grant the defendant's motion for direction of verdict upon the first

ground, in that the uncontradicted testimony showed that Mrs. Habenicht, to whose rights the Court attempted to subrogate Mrs. Walker, had no interest whatsoever in the property, her mortgage having been paid off in full before the institution of the suit, and in that the uncontradicted testimony showed that both the plaintiff and her agent, T. J. Walker, who is named in the policy as the assured, took out an additional sum of $2,000 on the property here in question, without notice to or permission of the defendant, in violation of the terms of the policy; it being provided by the terms of the policy that the same would be forfeited if such additional insurance, without notice to them, should be taken out.

"(3) That the Presiding Judge erred in refusing to grant the defendant's motion for a direction of verdict on the ground, in that there could be no subrogation of the plaintiff to the rights of the said Mrs. Habenicht, for the reason that the obligation paid by the plaintiff and her agent, T. J. Walker, was the plaintiff's own primary obligation, and the agreement of the insurance company was merely to turn over to the said Mrs. Habenicht any funds which might accrue by reason of the said policy, as her interest might appear.

"(4) In that the Presiding Judge erred in finding that the plaintiff should be subrogated to any rights which Mrs. Habenicht might have against this defendant, and, if she was so subrogated, in not requiring the delivery to this defendant of the securities which the said Mrs. Habenicht held, in accordance with the contract of insurance, which was the subject-matter of this action.

"(5) In that the Presiding Judge erred in finding that the said Mrs. Walker was not bound by the clause in the policy which provided for the forfeiture of the same in case of additional insurance being taken out without notice to this company.

"(6) In that the Presiding Judge erred, if he found that

the policy was not totally voided by the taking out of the additional insurance, admitted in the testimony, then he should have found that the additional insurance rendered the defendant liable for only its proportionate part of the loss, based on the value of the property as set out in the policy herein, which would have been $1,400, with interest at 7 per cent. from 60 days after the institution of the suit.

"(7) In that the Presiding Judge erred in finding that interest should be allowed from 120 days after the fire when he should have found that the same could not be allowed except from 60 days after the institution of the suit herein."

Respondent asks to sustain the judgment on the additional grounds:

"Because the undisputed and uncontradicted testimony shows that neither the plaintiff, Mrs. Walker, nor her agent, T. J. Walker, ever saw the policy of insurance until after the fire, but said policy was delivered to Mrs. Habenicht by the defendant's agent, and no provision in said policy could be binding on the plaintiff herein unless she had seen said policy and was aware of said provision.

"Because neither the plaintiff nor her agent having ever seen said policy until after the fire, no provision or provisions in said policy could be binding upon her, and no defense set up by the defendant could be available as against this plaintiff, and she was clearly entitled to a directed verdict without having the doctorine of subrogation applied in her favor."

Exception 1 should be overruled under the cases of *Bratton v. Catawba Power Co.,* 80 S. C., 260; 60 S. E., 673. *Alston v. Limehouse,* 61 S. C., 1; 39 S. E., 192. *Auten v. Catawba Power Co.,* 84 S. C., 399; 65 S. E., 274; 66 S. E., 180; and *Beal v. Divine,* 93 S. C., 352; 76 S. E., 987.

The testimony shows that the primary object in taking out the insurance was to protect the mortgage held by Mrs. Habenicht over the property. It was taken out in the name of T. J. Walker, the husband, although the title was in the

wife, Lula A. Walker, and premiums paid on it for 12 years. The policies were turned over to Mrs. Habenicht and were in her possession when the loss occurred. Mrs. Habenicht refused to bring suit against the insurance company, and, in order to get the policy, Mrs. Walker had to pay Mrs. Habenicht the debt as her debt. She had taken out the policy in order to protect the debt of Mrs. Habenicht. When the loss occurred Mrs. Habenicht refused to proceed against the insurance company, and the very object of taking the insurance would have been defeated, unless Mrs. Walker did as she was compelled to do, pay the mortgage to get possession of the policy. By doing so she became in every respect subrogated to the rights of Mrs. Habenicht in the insurance policy.

She did not pay off the mortgage as a primary obligation, but as a secondary obligation, to get possession of the policy in order that she might collect from the insurance company that protection against fire that she had paid the premiums for for 12 years. By doing as she did, she became subrogated to all rights in the policy of Mrs. Habenicht. *Mobile Insurance Co. v. Columbia & Greenville Railroad Co.,* 41 S. C., 408; 19 S. E., 858; 44 Am. St. Rep., 725.

The contract of the insurance company with Mrs. Habenicht as holder of the mortgage is a wholly independent contract from that with the original owner or mortgagor. Mrs. Habenicht had an independent contract with the insurance company whereby the insurance company insured her individual interest in the property. *Phenix Ins. Co. v. Omaha Loan & Trust Co.,* 41 Neb., 834; 60 N. W., 133; 25 L. R. A., 679. *Syndicate Ins. Co. v. Bohn,* 65 F., 165; 12 C. C. A., 531; 27 L. R. A., 614. *Eliot v. Commercial Assur. Co.,* 142 Mass., 142; 7 N. E., 550.

There is no question but that when Mrs. Walker paid the mortgage the rights of Mrs. Habenicht were transferred to

her.  *Prudential Investment Co. v. Connor,* 120 S. C., 42; 112 S. E., 539.

Mrs. Walker paid the debt; she was not a volunteer, but had a direct interest in the discharge of the debt or lien.  She was secondarily liable for the debt and discharge of the lien.  The insurance company was primarily liable to pay off the mortgage debt, for it was a contractual liability on their part to pay the mortgage to Mrs. Habenicht.  No injustice will be done to the insurance company.  Whether it paid to Mrs. Habenicht or Mrs. Walker cannot make any difference to the insurance company.

Every act necessary to make the doctrine of subrogation apply we have in this case.

I see no merit in any of the exceptions of the appellant.

All exceptions of the appellant should be overruled, and judgment affirmed.

Mr. CHIEF JUSTICE GARY concurs.