C. M. EVERHART v. ATLANTIC FIRE INSURANCE COMPANY et al.

(Filed 9 November, 1927.)

**Insurance, Fire—Policies—Mortgages—Loss Payable Clause—Settlement of Loss by Mortgagor—Actions.**

Where a fire insurance policy is issued on the dwelling of a mortgagor with a loss payable clause to the mortgagee as their interests may appear: *Held,* in the event the dwelling is destroyed by fire, the interest of the mortgagee as to the amount of his recovery is the same as that of the mortgagor, and after the latter has accepted a given amount in full settlement after the fire and executed his release, the former may not claim

against the insurer an amount greater than that agreed upon and accepted by the mortgagor in the absence of fraud, but this does not apply when the form of the mortgage clause is that of the "New York Standard Mortgage Clause."

APPEAL by defendant, Atlantic Fire Insurance Company, from *Lyon, Special Judge,* at April Special Term, 1927, of DAVIDSON.

Civil action by plaintiff appointee under ordinary loss payable clause in a policy of fire insurance, as interest may appear, to recover on contract of insurance issued by the Atlantic Fire Insurance Company to Sam Ayers.

The facts are these: On 14 December, 1925, the defendant company issued to Sam Ayers a fire insurance policy for a term of three years in the amount of $600.00, containing a three-fourths value clause, as a protection against loss or damage by fire to his dwelling or house situate in the town of Lexington, N. C. The plaintiff held a purchase-money mortgage on said house and lot for $1,600.00 at the time said policy was issued, in consequence of which the following loss payable clause was inserted therein:

"Any loss that may be ascertained and proven to be due the assured under the building items of this policy shall be held payable to C. C. Everhart, mortgagee, as interest may appear, subject, nevertheless, to all the terms and conditions of this policy."

On 31 January, 1926, while said policy was in full force and effect, the dwelling covered thereby was totally destroyed by fire.

Thereafter, on 19 February, 1926, the assured, Sam Ayers, and the defendant agreed upon a settlement and fixed the value of the house at $600.00 and the defendant's liability under the policy at $450.00. The defendant issued its voucher for this amount made payable to the plaintiff and Sam Ayers. The latter offers, in his answer to endorse the whole amount of said voucher over to the plaintiff, and alleges that the settlement is a fair and reasonable one. Plaintiff declines to accept the settlement, and contends that the value of the house at the time of the fire was not less than $1,200 and that the defendant is liable to plaintiff for the full amount of its policy, to wit, $600.00.

From a verdict and judgment in favor of plaintiff for $600.00, with interest from 1 April, 1926, the defendant appeals, assigning errors.

*P. V. Critcher for plaintiff.*
*Walser & Walser for defendant.*

STACY, C. J., after stating the case: Plaintiff was appointed under the policy in suit to receive payment, as his interest might appear, instead of the assured, in case the latter sustained any loss or damage to

his dwelling by fire during the time the·said policy of insurance was in force. This, it has been held in a number of cases (*Roper v. Ins. Co.,* 161 N. C., p. 161), is the extent of the mortgagee's interest in the contract when it arises, as it does here, under an ordinary loss payable clause, and not under a "New York standard mortgage cluase." We had occasion to consider the effect of the latter in *Bank v. Ins. Co.,* 187 N. C., 97, where it was said: "With respect to the rights of the mortgagee under the standard mortgage clause, it is the generally accepted position that this clause operates as a separate and distinct insurance of the mortgagee's interest, to the extent, at least, of not being invalidated by any act or omission on the part of the owner or mortgagor, unknown to the mortgagee; and, according to the clear weight of authority, this affords protection against previous acts as well as subsequent acts of the assured," citing authorities for the position.

But it is the holding with us, as well as with a majority of the courts throughout the country, that under an open "Loss Payable Clause" (a clause providing that the loss, if any, shall be payable to the mortgagee, as his interest may appear), in the absence of any other stipulation in regard to the interest of the mortgagee, the rights of the mortgagee are dependent entirely upon those of the mortgagor, and that any act or omission on the part of the latter, sufficient to avoid the policy as to the mortgagor, will avoid it as to the mortgagee also. Note: 18 L. R. A. (N. S.), 199. If this be true as to acts done before any loss occurs, we see no reason why a release executed by the assured, after the loss has been sustained, would not ordinarily be binding on the mortgagee. The property was his; the loss is his. *Gilman v. Commonwealth Ins. Co.,* 112 Me., 528, 92 Atl., 721, 55 L. R. A. (N. S.), 758, and note.

In the instant case, the assured has agreed to settle his loss with the defendant company for $450.00. There is no allegation of any collusion or fraud. We think the settlement is binding on the plaintiff.

The motion for judgment as of nonsuit should have been allowed.

·Reversed.