# Richmond

## PROVIDENT FIRE INSURANCE COMPANY, A NEW HAMPSHIRE CORPORATION v. UNION TRUST CORPORATION, A TENNESSEE CORPORATION.

November 30, 1953.

Record No. 4100.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Henry C. Bolling* and *Joseph M. Kuczko,* for the plaintiff in error.

*Robert B. Davis*, for the defendant in error.

SMITH, J., delivered the opinion of the court.

On March 1, 1948, Mrs. Fanny McGoldrick purchased a truck from Elliott Equipment Company, Bristol, Tennessee. For the unpaid balance of $3,684, she executed a conditional sales contract which was assigned by the seller to the Union Trust Corporation, plaintiff herein, and its lien is endorsed on the truck's certificate of title. Provident Fire Insurance Company, defendant herein, on the date of the purchase issued to Mrs. McGoldrick a policy insuring the vehicle against physical damage, the pertinent provisions of which read as follows:

"Loss Payee: Any loss hereunder is payable as interest may appear to the insured and Union Trust Corporation, Bristol, Tennessee.

\* \* \* \* \* \* \*

"If the insured and the company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place.

\* \* \* \* \* \* \*

"The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation nor the applicable limit of liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof, \* \* \* ."

During the life of the policy the truck was damaged by collision and fire. Elliott Equipment Company made an

estimate that necessary repairs would cost $1,805.25, which figure was checked and reduced to $1,762.75 by an adjuster for defendant insurance company. There was evidence for the plaintiff, disputed by the defendant, that the adjuster accepted this $1,762.75 estimate and told Mrs. McGoldrick to go ahead and have the truck repaired. In any event, she did not have the truck repaired by Elliott Equipment Company but instead by Porter Auto Sales.

Negotiations continued, however, between Mrs. McGoldrick and the defendant and on March 4, 1950 the insured and the insurer executed an agreement providing that: "Assured hereby claims of this Company and will accept in full release, and satisfaction in compromise settlement of all claims under this Policy-Certificate, by reason of said loss, the sum of $700.00."

The plaintiff had notice of the negotiations between the insurer and the insured but took no part in them and did not agree or consent to the settlement.

The defendant issued a draft for $700, dated March 4, 1950, payable to Union Trust Corporation, Mrs. McGoldrick and Porter Auto Sales, the repairman. When the plaintiff refused to endorse the draft, Porter Auto Sales obtained a $344.33 judgment for its repair bill which the defendant paid. Thereafter, an additional draft for the remainder of the $700 amounting to $355.67 (which defendant by stipulation admits is due plaintiff), was issued by the defendant and made payable to the plaintiff and Mrs. McGoldrick. The plaintiff also refused to accept this draft and instituted this action for $1,396 and interest, being the full amount of its lien, for which it contends the defendant is liable under the policy, since the damage to the vehicle amounted to more than its claim.

The jury returned a verdict of $1,218.42 for the plaintiff, subject to a credit for the $355.67 draft above mentioned, on which the court entered judgment and to which judgment we awarded this writ of error.

Although there are fourteen errors assigned, the decisive

question in the case is: What are the rights of the plaintiff under the provisions of the insurance policy? The trial court held that the settlement of loss by the insured and the insurer was not binding on the plaintiff without its consent. The defendant, on the other hand, insists that the plaintiff is merely an appointee having no rights independent of the insured and is therefore bound by the acts of the insured.

In *New Brunswick Fire Ins. Co.* v. *Morris Plan Bank*, 136 Va. 402, 118 S. E. 236, the insurance policy covering a motor vehicle contained this clause: "Loss, if any, payable to the Morris Plan Corporation, as their interest may appear." The Morris Plan Bank succeeded to all the rights of the insured, Morris Plan Corporation. The property insured was destroyed and at the trial it was disclosed that the insured had taken out additional insurance in violation of a provision that if there was any other insurance in effect at the time a loss occurred the policy would be null and void. In reversing the judgment in favor of the Morris Plan Bank and holding that its rights were entirely derived from the insured, Judge Prentis speaking for the court said: "There is no practical difficulty in protecting the insurable interests of mortagees so that no independent action of the mortgagors can injuriously affect them. Instead of having the 'loss payable' clause, which is the clause here involved, the mortgagee may either insure in his own name, or he may have the benefit of what has come to be known as the 'union mortgage' clause, by which it is stipulated that in case the loss is directed to be payable to a mortgagee, the interest of the mortgagee in the proceeds of the policy shall not be invalidated by the act or neglect of the mortgagor or owner of the insured property; or there may be a provision that no act or default of any person other than the mortgagee, or those claiming under him, shall affect his right to recover in case of a loss. This clause [union mortgage] has been frequently construed, and the authorities are unanimous in holding that it acts as a separate and independent insurance

of the mortgagee's interest, to this extent, at least, that no act or omission on the part of the owner, which occurs after the issuance of the policy, shall affect the mortgagee's right to recover. It seems to be perfectly settled that where there is merely a clause providing that the loss, if any, shall be payable to the mortgagee as his interest may appear, that the contract as to the mortgagee is merely collateral to the principal undertaking to pay the mortgagor, that the mortgagee is merely an appointee of the fund, that his rights are no greater than those of the assured, and therefore a breach by the latter will avoid the policy as to the mortgagee."

The identical question here considered was presented in *Everhart* v. *Atlantic Fire Ins. Co.*, 194 N. C. 494, 140 S. E. 78, which expressly held that a mortgagee, claiming under an open or simple loss payable clause, is bound by a settlement agreement between the insured and the insurance company fixing the amount of the loss even though the mortgagee was not a party to the agreement.

The *Everhart* case, *supra*, was reaffirmed in *Green et al.* v. *Fidelity-Phenix Fire Ins. Co.*, 233 N. C. 321, 64 S. E. (2d) 162 (1951). The question in this case was whether a mortgagee under an open or simple loss payable clause was bound by an appraisal or arbitration had in good faith by the insured and the insurance company and in which the mortgagee had no opportunity to participate. In holding that the mortgagee was bound the court said: "The decisions in other states are in irreconcilable conflict; 38 A. L. R. 383; 25 L. R. A. (N. S.) 741; 19 L. R. A. 321; 18 Ann. Cas. 271.

"Nevertheless, the cases in this state and the better considered cases elsewhere construing the open or simple loss-payable clause point unerringly to the conclusion which must be reached if due heed is accorded to the language employed by the parties to express their agreement. These cases hold that when an open or simple loss-payable clause is attached to or inserted in a policy insuring property against loss, it does not create a new or original contract between the insurance company and the mortgagee effecting a sep-

arate insurance of the mortgage interest, or abrogate the provisions of the policy placing the insurance on the property of the mortgagor as owner. Such clause merely makes the mortgagee an appointee of the insurance fund, entitling him to receive so much of any sum that may become due to the mortgagor under the policy as does not exceed his interest as mortgagee, and nothing more. The rights of the mortgagee under the clause are wholly derivative, and cannot exceed those of the mortgagor." See 124 A. L. R. 1034 for additional cases.

In seeking to distinguish the case at bar from the *New Brunswick* case, *supra,* the plaintiff contends that while its rights may have been defeated by the insured's acts before loss, such rights can be forfeited only with its consent after loss has occurred. This contention finds support in 29 Am. Jur. 447: "However, while the mortgagee's right of recovery under an indorsement on a policy issued to the mortgagor containing a simple mortgage clause making the loss payable to the former may be defeated by any breach of conditions by the insured before loss occurs, it cannot be defeated by an act of the insured after the loss has occurred." This statement, however, loses much of its force when read in the light of the following from the same volume at page 936: "Where in addition to a simple loss-payable clause the policy contains provisions authorizing the insured and insurer to ascertain the amount of a loss, appoint appraisers, etc., the mortgagee has been held bound by an adjustment of loss by the insurer and insured." See also, 5 Joyce, Law of Insurance (2d ed.) § 3249.

The insurance policy here considered contains the provision that "If the insured and the company fail to agree as to the amount of loss, * * * " they shall ascertain the loss by appraisal. Nowhere does the policy provide for notice to the plaintiff or that opportunity be given it to take part in the determination of the amount of the loss or in the settlement. We cannot create contract rights and relations for the protection of those who have failed to protect themselves.

The plaintiff could have protected itself against the acts of the insured by insuring in its own name or by requiring a "union mortgage", instead of a "loss payable", clause in the policy. *New Brunswick* and *Green* cases, *supra*.

The plaintiff has no rights greater than those of the insured and is merely an appointee entitled only to so much of any sum due the insured as does not exceed its interest. Therefore, if the release executed by the insured was in good faith, without fraud or collusion, it is binding on the plaintiff.

Our only remaining inquiry is whether the agreement by which the insured consented to settle her loss for $700 was executed in good faith. The plaintiff states that there was overreaching on the part of the defendant in obtaining this settlement. The insured was represented by an attorney when she signed the release. No allegation of fraud or collusion appears in the motion for judgment, and that issue was not submitted to the jury. There is no substance in this contention.

For the reasons stated judgment will be entered here for the plaintiff in the amount of $355.67, a draft for which has been tendered the plaintiff and defendant admits it owes, but in other respects the judgment of the trial court will be reversed and final judgment entered for the defendant.

*Reversed and final judgment.*