## CIRCUIT COURT OF ROCKINGHAM COUNTY

Truck & Equipment Corp.

v.

Sagamore Insurance Co.

September 12, 2002

Case No. (Law) CL02-12741

BY JUDGE JOHN J. MCGRATH, JR.

This case is before the Court on a Joint Stipulation of facts, and an oral motion for summary judgment. Counsel for both parties filed written memoranda.

*Facts*

Brian Keith Herring purchased insurance from Defendant for a 1996 Mack Truck. The insurance policy listed Farmers & Merchants Bank (F&M) as the Loss Payee.

The Loss Payee Clause states that "[t]he insurance covering the interest of the loss payee shall apply except if invalidated by your fraudulent act or omissions. But, we have the right to cancel this policy as provided by its terms and the cancellation shall terminate this agreement with respect to the loss payee's interest. When we cancel, we will give you the same advance notice of cancellation to the loss payee as we give to you."

Both parties to the case at bar agree that, as used in the policy, "we" refers to Defendant Sagamore, the insurer, while "you" refers to Herring, the insured.

Herring later modified this insurance policy, substituting a 1979 Ford Dump Truck for the 1996 Mack Truck. Defendant did not give F&M any notice of this change.

The 1996 Mack Truck was subsequently stolen. F&M submitted a claim for reimbursement to Defendant. Defendant denied the claim, as the Mack Truck was not covered by the insurance policy at the time of the theft.

F&M then assigned its rights as Loss Payee to Plaintiff.

*Arguments*

Plaintiff argues that the modification of the insurance contract was effectively a "cancellation" of the contract. Plaintiff argues that F&M was entitled under the Loss Payee clause to advance notice of any cancellation. As there was no such notice, Plaintiff argues that the cancellation was ineffective as to F&M's Loss Payee interest in the Mack Truck. Plaintiff argues that, because it has acquired F&M's interest as Loss Payee and because Plaintiff now stands in the place of the Loss Payee, Plaintiff is now entitled to reimbursement from Defendant for the loss of the Mack Truck.

Plaintiff also argues that F&M was statutorily entitled to notice under Va. Code § 38.2-2208(B) and that F&M was entitled to notice under general legal maxims relating to the interpretation of insurance coverage.

*Analysis*

First, the Court finds that Va. Code § 38.2-2208(B) does not create an affirmative duty to notify a lienholder or loss payee, but only dictates the form that such notice must take, should the insurance contract require it. By its terms, the statute only applies "[i]f the terms of the policy require the notice of cancellation or refusal to renew to be given to any lienholder. . . ."

Second, as to the contractual right to notification in the event of a cancellation, the Court finds that there are two methods for canceling the insurance policy at issue in this case during the policy period:

1. You may cancel the policy by returning it to us or by giving us advanced notice of the date cancellation is to take effect.

2. We may cancel the policy by mailing you at least 30 days notice at your last address known by us. We may deliver any notice instead of mailing it. Proof of mailing of any notice will be sufficient proof of notice.

Mindful that ambiguous contractual language must be construed against the drafter, the Court will assume, for the sake of argument, that Herring's action of substituting the 1979 Ford Dump Truck for the 1996 Mack Truck did in fact constitute a "cancellation" of the policy. However, the notice provision of the Loss Payee clause in this insurance contract indicates that "[w]hen we cancel, we will give the same advance notice of cancellation to the loss payee as we give to you." The Court finds that this provision only implicates cancellations initiated by the insurer, rather than cancellations initiated by the insured. Since the purported "cancellation" here was initiated by Herring, the insured, the Loss Payee notice provision was not triggered.

Even if the notice provision had been triggered by the actions of Herring, the Loss Payee would only be entitled to "the same advance notice of cancellation . . . as we give to you," the insured. Since the insured is not entitled to notice when the insured initiates a cancellation; neither is the Loss Payee.

Third, in considering the possibility that general legal maxims relating to the interpretation of contracts dictate coverage in the present case, the Court found two cases to be particularly instructive: *New Brunswick v. Morris Plan*, 136 Va. 402 (1923); and *Provident Fire v. Union Trust*, 195 Va. 415 (1953). In both cases, the Supreme Court analyzed the rights of loss payees.

In *New Brunswick*, the insured secured a second insurance policy on an automobile which he had already insured. The original insurance policy prohibited obtaining additional insurance, so the insured's act of securing the second policy avoided the first policy. The Loss Payee under the first policy sought to assert its rights. The Court held that the fact that the loss payee was completely innocent of wrongdoing did not protect its interests:

There is no practical difficulty in protecting the insurable interests of mortgagees so that no independent action of the mortgagors can injuriously affect them. Instead of having the "loss payable" clause, which is the clause here involved, the mortgagee may either insure in his own name, or he may have the benefit of what has come to be known as the "union mortgage" clause, by which it is stipulated that in case the loss is directed to be payable to a mortgagee, the interest of the mortgagee in the proceeds of the policy shall not be invalidated by the act or neglect of the mortgagor or owner of the insured property; or there may be a provision that no act or default of any person other than the mortgagee, or those claiming under him, shall affect his right to recover in case of a loss. . . .

It seems to be perfectly settled that where there is merely a clause providing that the loss, if any, shall be payable to the mortgagee as his interest may appear, that the contract as to the mortgagee is merely collateral to the principal undertaking to pay the mortgagor, that the mortgagee is merely an appointee of the fund, that his rights are no greater than those of the assured, and therefore a breach by the latter will avoid the policy as to the mortgagee.

*Id.* at 407-08.

In *Provident Fire*, acting without the consent of the Loss Payee, the insured signed a release with the insurer. The Court held that this release was effective to extinguish the interests of the Loss Payee. In analyzing the Loss Payee Clause, the *Provident* Court cited favorably the observations of the North Carolina Supreme Court in *Green v. Fidelity-Phenix*, 233 N.C. 321, 64 S.E.2d 162 (1951):

Such clause merely makes the mortgagee an appointee of the insurance fund, entitling him to receive so much of any sum that may become due to the mortgagor under the policy as does not exceed his interest as mortgagee, and nothing more. The rights of the mortgagee under the clause are wholly derivative and cannot exceed those of the mortgagor.

*Provident* at 420.

The *Provident* Court went on to observe that:

We cannot create contract rights and relations for the protection of those who have failed to protect themselves. The plaintiff could have protected itself against the acts of the insured by insuring in its own name or by requiring a "union mortgage," instead of a "loss payable," clause in the policy.

The plaintiff has no rights greater than those of the insured and is merely an appointee entitled only to so much of any sum due the insured as does not exceed its interest. Therefore, if the release executed by the insured was in good faith, without fraud or collusion, it is binding on the plaintiff.

*Provident* at 420-21 (internal citations omitted).

In light of these cases, it is evident to this Court that Virginia law is not especially protective of the rights of loss payees when it comes to the actions

of insureds compromising insurance coverage. Therefore the Court finds that Virginia law does not require an insurer to give notice to a loss payee in the circumstances of this case.

Therefore, it is hereby adjudged, ordered, and decreed that Summary Judgment is granted to the Defendant, Sagamore Insurance Company. Endorsement of this Order by counsel is waived pursuant to Rule 1:13 of the Supreme Court of Virginia. Written objections may be filed within ten days of this Order. Nothing further remaining to be done with this case, it is hereby removed from the Docket. The Clerk of the Court is directed to send certified copies of this Opinion and Order to Mark B. Callahan, Esq., Counsel for Plaintiff Truck & Equipment Corp.; and to Thomas G. Bell, Jr., Esq., Counsel for the Defendant Sagamore Insurance Company.